UNITED STATES of America

v.

**Thomas William MORALES, Cielo Marin Buitrago, Jorge Marin Buitrago, and Jaime Calle, Defendants.**

**No. CR–83–00145(JBW).**

United States District Court, E.D. New York.

Aug. 3, 1983.

Raymond J. Dearie, U.S. Atty., E.D.N.Y., Brooklyn, N.Y., for plaintiff; Kenneth I. Wirfel, Jr., Asst. U.S. Atty., Brooklyn, N.Y., of counsel.

David S. Zapp, Richard A. Greenberg, New York City, for defendant Thomas William Morales.

Salvatore C. Alosco, New York City, for defendant Cielo Marin Buitrago.

Frank A. Lopez, Brooklyn Heights, N.Y., for defendant Jorge Marin Buitrago.

Martin L. Schmukler, New York City, for defendant Jaime Calle.

## MEMORANDUM AND ORDER

WEINSTEIN, Chief Judge.

Defendants were charged with violation of the federal narcotics laws. One pleaded guilty unconditionally, one entered a guilty plea preserving his right of appeal, one was convicted and one was acquitted following a bench trial. All but the defendant pleading unconditionally moved to suppress certain evidence. Their principal argument was that a search warrant was rendered defective by the failure of law enforcement officers to apprise the issuing magistrate of material information that came to their attention after the warrant was issued. An evidentiary hearing was held on the suppression motions and for the reasons stated below they were denied.

## FACTS

In early March 1983, Special Agent Andrew Wnukowski of the Drug Enforcement Agency (DEA) received information concerning three tenants—two men and a woman—residing in a second floor apartment in Forest Hills, Queens. The first floor tenant, as well as the landlord, indicated that three Hispanics had moved into the apartment in January 1983, and thereafter kept irregular hours; changed the

locks on their apartment, telling the landlord it was because they kept "lots of money" in the premises; threw plastic bags down the toilet; and used a "beeper" but had no telephone.

Soon thereafter, Agent Wnukowski observed a brown Mustang bearing Florida license plates parked in front of the Forest Hills apartment. The car was one of those used by the suspect tenants. A computer check through the Florida Motor Vehicles Department revealed that the Mustang was registered to a Caesar Correa and had not been reported stolen. DEA computer records and telephone conversation with DEA agents in Florida revealed that Correa had been convicted in Miami of cocaine trafficking and was currently free on bail limited to the Miami area pending appeal.

Defendant Jorge Marin Buitrago bears a remote, but not implausible, resemblance to the picture of Correa. One of the agents assigned to the case made a positive identification based on his visual observations of Buitrago and a photograph of Correa. On the basis of information from New York that Correa was violating bail conditions, Florida agents obtained an arrest warrant for Correa and transmitted it to New York.

Reciting these facts (but not that the arrest warrant had been obtained on the basis of information supplied by the New York agents) and stating his belief that Correa was engaging in narcotic trafficking on the premises, Agent Wnukowsky sought a search warrant for the Forest Hills apartment. It was granted but not immediately acted on.

Several days later the occupants of the Forest Hills apartment were followed to an address on Nicolls Avenue in Queens. Both the Forest Hills and Nicolls Avenue residences were kept under surveillance that day. Subsequently, the defendant Jorge Marin Buitrago was observed leaving the Nicolls Avenue residence driving the brown Mustang in the company of two women.

Agents of the task force followed the car. They stopped it when the driver appeared to be taking evasive action. Upon being ordered out of the car and arrested, Buitra-go denied that he was Correa and produced documents attesting to his identity.

Some of the agents on the scene returned to the Nicolls Avenue residence with the two women and on their consent searched the premises. Present in that apartment were defendants Morales and Cielo Marin Buitrago. The latter's baggage contained some $50,000 in cash. While the agents were at the Nicolls Avenue residence defendant Calle appeared carrying a gym bag smelling of cocaine. He was apprehended after attempting to flee. A warrant search of the bag confirmed that it contained several pounds of high quality cocaine.

Meanwhile, other agents returned with Jorge Marin Buitrago to the Forest Hills apartment and executed the search warrant. The agents found substantial amounts of cocaine, narcotic paraphernalia and ledgers indicative of large narcotics transactions.

Late that evening a copy of Buitrago's fingerprints were sent to Washington for identification. The following morning the agents were informed of the results of the fingerprint analysis—Buitrago was not Correa. The agents conveyed this information to their Florida counterparts, who then had the arrest warrant for Correa vacated.

Defendants contend that the agents must have doubted that Buitrago was Correa after seeing his identifying documents and viewing him at close range. The DEA's description of Correa listed scars on his left hand and, according to the defendants, the agents should have ascertained at the time of arrest that Buitrago had no such scars. Defendants maintain that the agents were reckless in their continuing belief, if they had such belief, that Buitrago was Correa.

Agent Wnukowski testified that at the time he and others executed the warrant they continued to believe that Buitrago was Correa and that the facts in the affidavit supporting the warrant were accurate. They attribute their failure to notice the absence of scars to an oversight.

■ Defendants lack standing to challenge the search of the Nicolls Avenue residence since they were merely casual visitors. The challenge to the Forest Hills apartment search, however, raises novel issues of law.

## LAW

■ An issuing magistrate has the power to vacate a warrant when he learns that the facts do not support it. While not provided for in the Rules of Criminal Procedure, such authority logically inheres in the power to issue a warrant.

Practice confirms this conclusion. The Florida arrest warrant for Correa in this case was vacated by the issuing magistrate when it was learned that the identification of Buitrago as Correa was in error. The government informs the court that it is the regular practice in this district to return to the issuing magistrate and request that a warrant be vacated when newly acquired information indicates that the warrant should not have issued.

The question posed is whether an affiant who has obtained a warrant must return to an issuing magistrate upon receiving new information material to the warrant issuing decision so that the magistrate may decide whether to vacate. The question appears to be one of first impression. Counsel have indicated that they are unaware of relevant case authority.

■ Prior to a search there is an obligation to bring to the attention of an issuing magistrate any change of circumstance based upon additional or corrective information known to government agents, if the new information could reasonably have affected the judicial officer's decision had it been made known to him before issuance of the warrant. A warrant may become stale with the passage of time. *See* W. LaFave, Search and Seizure § 4.7(a) (1978); *cf.,* Fed. R.Crim.Proc. 41(c) (search warrant must be executed within ten days). So, too, its usability may be affected by changing events. *Compare* Fed.R.Crim.Proc. 12.1(c) (continuing duty to disclose alibi witnesses); 16(c) (continuing duty to disclose discovery materials).

■ The obligation to bring an affidavit up-to-date is relaxed where there is a well-grounded fear that delay in execution could result in the destruction of evidence or the flight of suspects or comprise the safety of government agents. Because of the existence of a facially valid warrant, the exigency need not be as great as one necessary to justify a warrantless search. The law "recogni[zes] that once a warrant has been obtained, intrusion upon interests protected by the Fourth Amendment is less severe than otherwise may be the case." *Illinois v. Gates,* —— U.S. ——, —— n. 10, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983). The exigency need not exist at the exact moment law enforcement officers learn of the new information. It is sufficient that it exist within a reasonable time after the discovery of the new information while the agents are investigating the information's significance with reasonable dispatch.

■ Even where there is no such urgency, the failure of the government to apprise the issuing magistrate of new and material information does not necessarily invalidate the search. If the affiant negligently, but in good faith, believes that the new information does not materially alter the force of his affidavit, he would be in much the same position as an affiant who inadvertently supplies false information to an issuing magistrate. *See Franks v. Delaware,* 438 U.S. 154, 156, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978) ("perjury or reckless disregard" required to set aside warrant). *Compare Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (no constitutional violation where claimant mistakenly arrested pursuant to a warrant conforming with the Fourth Amendment); *Hill v. California,* 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971) (seizure incident to mistaken, but objectively reasonable arrest held valid).

In such cases the facially valid warrant is not open to challenge. If, however, the affiant intentionally or recklessly chooses to disregard what he knows to be new and

important information or if he deliberately closes his eyes to avoid discovering such information, the search cannot be sanctioned based on the warrant's facial validity.

### APPLICATION

■ Papers carried by the defendant Jorge Marin Buitrago indicating that he was not Correa constituted material information which might have affected the decision of the magistrate to issue the warrant.

Even under a relaxed standard of exigency, there existed no exigency sufficient to justify a search without first apprising the issuing magistrate of the new information. The drug enforcement task force had all known occupants of the Forest Hills address and the house itself under surveillance at the time of Buitrago's arrest. The agents may have reasonably harbored an apprehension of the involvement of other, unknown participants in the drug conspiracy and their possible presence in the Forest Hills apartment. There is always the danger that confederates alerted to an arrest might flee, destroy contraband, or endanger the lives of agents working on the case. In this instance, however, there was no necessity for a full-scale search prior to a return to the magistrate. The agents at the Forest Hills address could have maintained their surveillance while the magistrate was approached. If they feared the presence of others in the apartment, they could have entered the premises to ascertain whether it was occupied, but refrained from conducting a full-scale search until the magistrate decided to uphold or vacate the warrant. *See, e.g., United States v. Korman,* 614 F.2d 541 (6th Cir.1980) (proper for agents to secure house for fear of destruction of evidence and subsequently obtain warrant for more exhaustive search), *cert. denied,* 446 U.S. 952, 100 S.Ct. 2918, 64 L.Ed.2d 808 (1980). *See also Vale v. Louisiana,* 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970) (no exigency where officers knew at the time of entry that no one was in the house). *Cf. Rawlings v. Kentucky,* 448 U.S. 98, 110, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980) ("le-gality of temporarily detaining a person on the scene of suspected drug activity to secure a search warrant may be an open question").

■ Here, the legality of the search of the Forest Hills apartment must be upheld because the drug enforcement agents in good faith believed that the information learned at the time of Buitrago's arrest was not material to the warrant. That good faith was established by the required preponderance of the evidence. *See Franks v. Delaware,* 438 U.S. 154, 156, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978). It was the agents' experience that drug traffickers often use aliases. *Cf. Hill v. California,* 401 U.S. 797, 803, 91 S.Ct. 1106, 1110, 28 L.Ed.2d 484 (1971). There was a continuing strongly held belief of at least one of them that Buitrago resembled Correa. The agents' negligent failure to note the absence of scars on Buitrago's hand was not reckless, given the tensions and heat of the chase.

Some time was required for a comparison of fingerprints that would definitively establish whether the driver of the car was Correa. The possibility of such a comparison does not undermine the agents' claim of good faith belief.

The agents possessed a facially valid warrant. While they acquired new information as the drug case they had been following for some time unfolded, this information had to be evaluated in a necessarily "informal . . . hurried context." *Illinois v. Gates,* —— U.S. ——, ——, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983). The law cannot fault the agents for executing the warrant because an after-the-fact analysis demonstrates the infirmities of their contemporaneous beliefs.

### CONCLUSION

A law enforcement officer must ordinarily return to the issuing magistrate prior to executing a search warrant upon learning of new material information not contained in the affidavit sworn in support of the warrant. While drug enforcement agents failed to do so in this case, their execution of the warrant was not invalidated because

of their good faith, though erroneous, belief that the new information was not material. Accordingly, defendants' motion to suppress is denied.

So ordered.