**UNITED STATES of America, Appellee,**

v.

**Cielo MARIN–BUITRAGO, Tomas William Morales, Defendants-Appellants.**

**Nos. 783, 784, Dockets 83–1339, 83–1354.**

United States Court of Appeals, Second Circuit.

Argued Feb. 14, 1984.

Decided May 8, 1984.

---

See also, D.C., 568 F.Supp 646.

Richard A. Greenberg, New York City (David S. Zapp, New York City, of counsel), for defendant-appellant Morales.

Frank A. Lopez, Brooklyn, N.Y. (London & Lopez, Brooklyn, N.Y., of counsel), for defendant-appellant Marin-Buitrago.

Kenneth I. Wirfel, Asst. U.S. Atty., E.D. N.Y., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Gregory J. Wallance, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for appellee.

Before MESKILL, PIERCE and PRATT, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from judgments of the United States District Court for the Eastern District of New York, Weinstein, J., convicting Tomas William Morales (Morales), upon a conditional guilty plea, of one count of possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1982), and Cielo Marin-Buitrago (Cielo), after a bench trial, of conspiring to distribute cocaine and possessing cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846 (1982).

Appellants seek the suppression of evidence seized during a search of their apartment pursuant to a search warrant. They claim that the search warrant was invalid because the executing officers failed to report to the issuing magistrate material new information that the officers acquired between the warrant's issuance and its execution.

We hold that the evidence was properly admissible because the warrant was valid when it was executed. Consequently, we affirm appellants' convictions.

## BACKGROUND

In early March 1983, Special Agent Andrew Wnukowski of the Drug Enforcement Administration (DEA) received unsolicited information from a tenant residing in a two family residence in Forest Hills, New York. The tenant alleged that his upstairs neighbors, three Latin Americans, kept irregular hours, had changed their apartment locks and refused to provide the landlord with a key for the new locks, claiming that they kept considerable money in the apartment, had flushed plastic bags down the toilet, and used "beepers" in the apartment instead of a telephone. The landlord subsequently confirmed most of these facts. The actual identities of the tenants, Morales, Cielo and an additional defendant, Jorge Marin-Buitrago (Marin), were unknown to the informant tenant and DEA agents.

Surveillance of the Forest Hills apartment revealed that the Latin American suspects used a brown Mustang automobile with Florida license plates. Through a computer search, the agents discovered that the Mustang was registered to Cesar Correa, a convicted narcotics trafficker who had been released on an appeal bond in the Southern District of Florida. As a condition of his release, Correa was restricted to the Southern District of Florida. A description of Correa coincided with the tenant informant's description of Marin, a suspect that the tenant saw driving the Mustang.[1] An arrest warrant for Correa was issued in the Southern District of Florida for bailjumping. New York City Police Officer Romanolo, watching the apartment, subsequently identified Marin, the driver of the Mustang, as Correa from 1980 photographs of Correa.

On March 18, 1983, Agent Wnukowski submitted an affidavit to Magistrate Chrein in the Eastern District of New York in support of an application for a search warrant for the Forest Hills apartment. The affidavit stated that the agent had reason to believe that the apartment contained evidence of narcotics trafficking and Correa's bailjumping. The agent articulated the following grounds for his belief:

1. [He was] advised by a private citizen, with no known criminal involvement ... that three Latin American individuals reside in the subject premises, two males and one female.

2. That person advised [him] that these individuals keep irregular hours, usually arriving at the subject premises between 3:00 a.m. and 5:00 a.m. in the morning and then leaving for short periods of time during the day.

3. The landlord of the subject premises ... advised [him] that the three aforementioned individuals moved into the subject premises ... and a few days later had a locksmith install new locks on all the doors. These individuals advised the landlord that they required new locks because they kept "lots of money" in the apartment.

4. The landlord further advised [him] that these tenants told him that they did not have a telephone in the aforementioned premises but did have a beeper.

5. [A] search of the garbage of the subject premises [revealed] a receipt ... for new locks.... This receipt was in the name "Morales."

6. In [his] twelve years' experience as a Drug Enforcement Administration agent, he has found it a common practice among drug dealers to install locks and otherwise secure those locations where they stash drugs and/or monies which constitute the proceeds of drug trafficking. Moreover, drug traffickers are increasingly using beeper systems for com-

---

**1.** Correa, born in 1945, was described in 1980 as a light-skinned Latin American, 5 feet 7 inches to 5 feet 8 inches in height and weighing 150 pounds.

Marin was born in 1951 and was described at the time of his arrest as a light-skinned Latin American, 5 feet 7 inches to 5 feet 8 inches in height and weighing 175 pounds.

munications in order to minimize the likelihood of government interception of their conversations.

7. The landlord also advised [him] that ... the subject premises required the services of a plumber for a clogged sewer line. The plumber in repairing the line found the problem to be that the line was clogged with medium-sized clear plastic bags, which apparently had been flushed down the toilet of the subject premises.

8. In [his] experience, it is a common practice among drug dealers to use clear plastic bags to package narcotics and to flush down toilets items which might evidence their illicit drug trafficking.

9. [The tenant advised him] that two automobiles ha[d] been observed being used by the individuals who live in the subject premises, which vehicles are parked in the driveway of the subject premises.

10. ... [A motor vehicle check revealed] that one automobile with the Florida license plates YMG–554 is registered to one Ceasar [sic] Correa, 965 N.W. 106th Avenue, Miami, Florida, with a birthdate of March 10, 1945.

11. [He was informed] that Ceasar [sic] Correa ... is presently convicted in the Southern District of Florida for the possession and distribution of twenty (20) pounds of cocaine. Correa is currently released on $250,000 bail pending appeal. Correa's bail conditions require that he remain within the geographical limits of the Southern District of Florida. [He has] received an arrest warrant from [Florida] charging Ceasar [sic] Correa with violating his conditions of release, specifically leaving the Southern District of Florida without authorization.

12. [He has] received a photograph of Ceasar [sic] Correa.... After reviewing the photograph of Ceasar [sic] Correa, Officer Romanolo advised [him] that the male be [sic] observed [on the subject premises] was Ceasar [sic] Correa.

13. [He] believed that Correa is a major drug trafficker whose actions with respect to the subject premises suggest ongoing illicit trafficking.

On March 18, 1983, Magistrate Chrein issued a warrant authorizing a search of the Forest Hills apartment within ten days.

The agents did not immediately execute the warrant, but continued to observe the suspects' activities. On March 23, the agents observed Morales and Marin, whom they believed to be Correa, leaving the apartment carrying large plastic garbage bags which appeared to be heavy. The two men then proceeded to and entered an apartment building on Nicholls Avenue in Corona, New York.

On the evening of March 24, 1983, the agents followed Morales, Cielo and Marin from the Forest Hills apartment to the Nicholls Avenue apartment. At approximately 8:00 p.m., Marin, accompanied by two women, left the Nicholls Avenue apartment.[2] When they drove away in the Mustang, the agents followed. After driving several blocks, the agents forced the Mustang to stop when they determined that Marin detected their surveillance and was trying to escape. Still believing that Marin was Correa, the agents removed him from the Mustang. When the agents addressed him as Correa, Marin insisted that he was "Marin." The suspect then produced a Colombian driver's license and a Colombian military identification card issued in the name of "Marin-Buitrago." The two women accompanying Marin also insisted that he was not Correa. After arresting Marin, several of the agents proceeded to the Forest Hills apartment and executed the search warrant. They discovered approximately one pound of cocaine, narcotics paraphernalia and records of narcotics trafficking.

Other agents, accompanied by the two women, returned to the Nicholls Avenue

2. The women were residents of the Nicholls Avenue apartment. Neither woman was charged in this case.

apartment. The agents discovered Morales and Cielo sitting in the living room of the apartment. There, Cielo identified as hers several pieces of luggage and a plastic bag containing a shoe box wrapped with magnetic tape and explained that she was departing for Colombia the following day. The agents received notice by radio that the search of the Forest Hills apartment had uncovered narcotics and arrested Morales and Cielo. A subsequent search of the shoe box revealed approximately $50,-000 in cash.[3]

The following day, March 25, 1983, a fingerprint check confirmed that Marin was not Correa.

Prior to trial, appellants moved to suppress the evidence seized during the search of the Forest Hills apartment.[4] Appellants claimed that the failure of the agents to apprise the issuing magistrate of the uncertainty of Marin's identity rendered the warrant defective.

After an evidentiary hearing, the court denied the suppression motion. *United States v. Morales*, 568 F.Supp. 646 (E.D.N.Y.1983). Judge Weinstein held that officers, after a warrant is issued but before it is executed, have an obligation to bring to the attention of the issuing magistrate any new or corrective information that reasonably would have affected the magistrate's initial decision to issue the warrant. Failure to apprise the magistrate of such information would result in the invalidation of the warrant. The Judge determined that Marin's and his companions' protestations as to his identity and the identification papers produced by Marin would have been material to the magistrate's decision to issue the search warrant for the Forest Hills apartment. Judge Weinstein continued

that the duty to report the supplemental information to the magistrate would be excused if an exigency existed, such as the flight of the suspects or the destruction of evidence, or if the officers "negligently, but in good faith, believe[d] that the new information [did] not materially alter the force of" the facts presented in the affidavit. *Id.* at 649 (citing *Franks v. Delaware*, 438 U.S. 154, 156, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978) (To set aside a warrant because of misstatements in the affidavit supporting the warrant requires a showing of "perjury or reckless disregard" on the part of the affiant.)). The court concluded that no exigencies existed in the instant case. The duty to report the information, however, was excused because the agents had negligently, but in good faith, believed that the information on Marin's identity was not material to the magistrate's finding of probable cause. Therefore, the warrant was valid when executed and the evidence was lawfully seized.

## DISCUSSION

On appeal, none of the parties question the propriety of requiring law enforcement officers to report any material changes in the facts contained in a warrant affidavit that occur before the warrant is executed. We also do not question this requirement. Appellants argue, however, that there should be no good faith exception to this duty to report to the issuing magistrate. Appellants argue that even if such an exception existed, the agents in the instant case could not have believed in good faith that the information concerning Marin's identity was not material to the magistrate's finding of probable cause. We need not reach appellants' arguments because

---

3. While the agents were in the Nicholls Avenue apartment, Jaime Calle arrived at the apartment. When confronted by the police, Calle dropped a red gym bag and attempted to flee. Calle was apprehended. A later search of the gym bag, pursuant to a warrant, revealed approximately five pounds of cocaine. Calle was indicted for conspiracy to distribute and possess cocaine and possession with intent to distribute five pounds of cocaine. Calle pleaded guilty unconditionally.

4. Appellants also attempted to suppress the evidence seized in the search of the Nicholls Avenue apartment, but were found to lack standing.

Marin, who was indicted for conspiracy to distribute and possess cocaine and for possession of one pound of cocaine, joined in the motion to suppress the evidence seized in both apartments. Marin, however, was acquitted on all charges.

we hold as a matter of law that the facts revealed at the time of Marin's arrest were not material to the finding of probable cause.

In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court held that material information contained in a warrant affidavit must be "truthful."[5] This veracity requirement was derived from the language of the Warrant Clause, which requires a showing of probable cause, supported by oath or affirmation, for the issuance of a warrant. As the Court explained, "[W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing." *Id.* 438 U.S. at 164–65, 98 S.Ct. at 2680–81 (quoting *United States v. Halsey*, 257 F.Supp. 1002, 1005 (S.D.N.Y. 1966), *aff'd*, Docket No. 31369 (2d Cir. June 12, 1967)).

 Certain restrictions are placed on the execution of search warrants to ensure that probable cause, as well as the veracity of the information in the affidavit, exists when the warrant is executed. Fed.R. Crim.P. 41(c) mandates that a search warrant must be executed within ten days of its issuance. Unreasonable delay in the execution of a warrant that results in the lapse of probable cause will invalidate a warrant. *See United States v. Lemmons*, 527 F.2d 662, 664 (6th Cir.1975); *United States v. Dunnings*, 425 F.2d 836, 841 (2d Cir.1969), *cert. denied*, 397 U.S. 1002, 90 S.Ct. 1149, 25 L.Ed.2d 412 (1970); 8B Moore's Federal Practice ¶ 41.06[3][a][5] (2d ed. 1983). These limitations exist to ensure "the speediest possible execution of search warrants," *Mitchell v. United States*, 258 F.2d 435, 440 (D.C.Cir.1958) (Bazelon, *J.*, concurring), and to lessen the

possibility that the facts underlying the warrant may change. *Id.* at 437. The restrictions, however, not only ensure that probable cause continues to exist, but also that it is the neutral magistrate, not the executing officers, who determines whether probable cause continues to exist. 8B Moore's Federal Practice ¶ 41.06[3][a][5], at 41–91 n. 67. *See Franks v. Delaware*, 438 U.S. at 165, 98 S.Ct. at 2681. Thus, when a definite and material change *has* occurred in the facts underlying the magistrate's determination of probable cause, it is the magistrate, not the executing officers, who must determine whether probable cause still exists. Therefore, the magistrate must be made aware of any material new or correcting information.

The duty to report new or correcting information to the magistrate does not arise unless the information is material to the magistrate's determination of probable cause. The issue of materiality may be characterized as a mixed question of law and fact, *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 450, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976) (materiality of misrepresentations in proxy statements), or as a pure question of law,[6] *United States v. Elkin*, 731 F.2d 1005, 1009–10 (2d Cir. 1984) (materiality of false federal claim); *United States v. Pruitt*, 702 F.2d 152, 155 (8th Cir.1983) (per curiam) (materiality of false statement in invoice). We are not bound by the findings of the district court under either characterization. *GAF Corp. v. Heyman*, 724 F.2d 727, 738 (2d Cir.1983) (review of application of legal standard to facts not limited by clearly erroneous rule); *Cathbake Investment Co. v. Fisk Electric Co.*, 700 F.2d 654, 656 (11th Cir.1983) (question of law subject to plenary review); *K & M Joint Venture v. Smith International, Inc.*, 669 F.2d 1106, 1111–12 (6th Cir.1982) (review of mixed questions not bound by

---

5. The Supreme Court continued that "truthful" does not mean "that every fact recited in the warrant affidavit is necessarily correct," but only that affiant believed or accepted the facts as true. 438 U.S. at 165, 98 S.Ct. at 2681. We do not reach the question of whether a law enforcement officer's good faith belief that new information is not material affects the duty to report that information.

6. Appellant Morales argues that materiality is a question of law. Post-argument letter of Richard A. Greenberg, attorney for Appellant Morales at 3 (Mar. 14, 1984) (submitted at request of Court). The government maintained at oral argument that materiality in this case is a mixed question of law and fact.

clearly erroneous standard); *First National Bank of Cincinnati v. Pepper*, 547 F.2d 708, 710 (2d Cir.1976) (mixed question of law and fact open to full review); *McLeod v. Business Machine and Office Appliance Mechanics Conference Board Local 459, IUE*, 300 F.2d 237, 239 (2d Cir.1962) (with question of law, appeals court need only decide if judge below was "wrong"); *but see Rogers v. Bates*, 431 F.2d 16, 18 (8th Cir.1970) (mixed question of law and fact subject to clearly erroneous standard).

■ Facts omitted from a warrant affidavit are not material unless they cast doubt on the existence of probable cause. *United States v. Dennis*, 625 F.2d 782, 791 (8th Cir.1980).[7] The omitted information and the information in the affidavit must be considered as a whole in determining if probable cause continues to exist. *United States v. Kunkler*, 679 F.2d 187, 190–91 (9th Cir.1982); *United States v. Martin*, 615 F.2d 318, 328 (5th Cir.1980).

In determining on this appeal whether the affidavit still supports a finding of probable cause after the inclusion of information on the identity of Marin acquired during his arrest, we must assume the role of the issuing magistrate. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, ——, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983).

Cases from other circuits on the materiality of misstatements in affidavits indicate that the identity of the suspect need not be material to the finding of probable cause.[8] In *United States v. Thomas*, 489 F.2d 664 (5th Cir.1973), *cert. denied*, 423 U.S. 844, 96 S.Ct. 79, 46 L.Ed.2d 64 (1975), a suspect was erroneously identified in an affidavit supporting the request for a search warrant. Informants had told a DEA agent that a man named "Tee" offered to sell them narcotics. The agent subsequently learned that the 1971 Lincoln driven by the suspect was registered to James H. Finley, a known narcotics dealer. The agent's affidavit attributed the alleged criminal activity to Finley. The search revealed narcotics, but a post-arrest identification revealed that the suspect was not Finley, but Thomas Titus. The court stated that it was the description of criminal activities, not the inclusion of the name "Finley," that was determinative of probable cause. *Id.* at 668.

Similarly, in *United States v. Young Buffalo*, 591 F.2d 506, 511–12 (9th Cir.), *cert. denied*, 441 U.S. 950, 99 S.Ct. 2178, 60 L.Ed.2d 1055 (1979), the search warrant affidavit inaccurately recounted the eyewitness descriptions of a criminal perpetrator. Without these inaccurate descriptions, the suspect could not be positively identified as the perpetrator. The court held that a positive identification was not necessary to a finding of probable cause because there was sufficient indirect evidence to indicate *that the unidentified suspect was involved in criminal conduct.*

■ In light of these cases, we hold as a matter of law that the addition of the new information here would not affect the finding of probable cause. The only new information to be added to the affidavit is Marin's and his companions' denials that he was Correa and the Colombian identifications issued in the name of "Marin-Buitrago." This information in no way proved that Marin was not Correa. Narcotics traffickers commonly use aliases and carry false identification. *United States v. Morales*, 568 F.Supp. at 650; *cf. Hill v. California*, 401 U.S. 797, 803, 91 S.Ct. 1106, 1110, 28 L.Ed.2d 484 (1971) ("[A]liases and

---

7. Although these cases deal with the omission of material information from the original affidavit, the analysis would be the same when the information is discovered after the warrant is issued.

8. Even though the cases discuss the materiality of misstatements in, not omissions from, affidavits in support of a search warrant, the materiality of misstatements and omissions is determined through a similar analysis. *United States v. Martin*, 615 F.2d 318, 328 (5th Cir.1980); *United States v. Waxman*, 572 F.Supp. 1136, 1142–43 (E.D.Pa.1983).

false identifications are not uncommon."). Correa himself was known to use aliases. Record of Suppression Hearing at 282. The physical differences between Marin and Correa were too slight to be material. It is also unnecessary to consider that Correa's left hand was scarred, but Marin's was not. The agents were not aware of Correa's scars at the time of the arrest. In addition, the new information did not affect the veracity of the majority of the statements made in the affidavit including the suspicious activities in the Forest Hills apartment, the registration of the brown Mustang in Correa's name and Officer Romanolo's positive identification of Marin as Correa. Even with the supplemental information, the affidavit clearly establishes, by a fair probability, that evidence of narcotics trafficking or Correa's presence would be found in the Forest Hills apartment.

Because the warrant for the search of the Forest Hills apartment was supported by probable cause at the time it was executed, the district court properly denied appellant's motion to suppress the evidence seized pursuant to the warrant.

The judgments of conviction are affirmed.