UNITED STATES of America

v.

Victor Manuel GERENA, et al.

Crim. No. H–85–50 (TEC).

United States District Court, D. Connecticut.

June 3, 1987.

---

Albert S. Dabrowski, Carmen E. Van Kirk, John A. Danaher, III, Stanley A. Twardy, Jr., U.S. Attys., David D. Buvinger, William J. Corcoran, Trial Attys., U.S. Dept. of Justice, Hartford, Conn., for plaintiff.

Juan R. Acevedo, Hartford, Conn., for Norman Ramirez Talavera.

Harold Meyerson, New York City, for Ivonne Melendez Carrion.

Diane Polan, New Haven, Conn., for Elias Castro Ramos.

Margaret P. Levy, Hartford, Conn., for Angel Diaz Ruiz.

Michael Deutsch, Chicago, Ill., for Orlando Gonzalez Claudio.

John Williams, New Haven, Conn., for Hilton Fernandez-Diamante.

James Bergenn, Shipman & Goodwin, Hartford, Conn., for Carlos Ayes-Suarez.

Richard Reeve, Asst. Federal Public Defender, New Haven, Conn., for Isaac Camacho-Negron.

Linda Backiel, Philadelphia, Pa., for Antonio Camacho Negron.

Leonard I. Weinglass, New York City, for Juan E. Segarra-Palmer.

William M. Kunstler, New York City, for Filiberto Ojeda Rios.

Michael Avery, Avery & Friedman, Boston, Mass., for Jorge Farinacci Garcia.

Ronald L. Kuby, New York City, for Luis Colon Osorio.

Robert J. Maldonado-Rivera, Rio Piedras, P.R., pro se.

F. Mac Buckley, Buckley & Santos, Hartford, Conn., for Paul Weinberg.

Jacob Wieselman, Hartford, Conn., for Luz Berrios-Berrios.

## RULING ON DEFENDANT JUAN SEGARRA PALMER'S "STANDING" TO CHALLENGE THE ADMISSABILITY OF EVIDENCE SEIZED AT 45 COTTAGE STREET, CAMBRIDGE, MASSACHUSETTS

CLARIE, Senior District Judge.

The defendant Juan Segarra Palmer claims to have standing to seek the suppression of evidence obtained as a result of the August 30, 1985 search of the apartment residence of non-defendant Anne Gassin located at 45 Cottage Street, Cambridge, Massachusetts. The defendant alleges that he had a reasonable expectation of privacy in the apartment. The Court finds, however, that the defendant's allegations, even if taken as true, do not make out a colorable standing claim sufficient to permit the Court to proceed further on this issue. The Court concludes that the defendant's claim of standing with regard to the apartment must be denied.

### Facts

The 45 Cottage Street location is a two-floor apartment occupying the second and third floors of a wooden frame, duplex structure. On August 30, 1985, and for some time prior to this date, Anne Gassin resided there with two roommates: Abagail Snyder and Melissa Zieve. *Transcript of Proceedings of January 29, 1987*, pp. 119–20. The Apartment was rented to Ms. Melissa Zieve, *Id.* at 143, with each room-

mate contributing $250 per month towards the rent and upkeep of the premises. *Id.* at 122. The defendant, Juan Segarra, does not claim that he contributed anything toward the rent of the apartment, or its normal upkeep. The phone and other utilities were listed in the name of Ms. Zieve. *Id.* at 143–44. The defendant does claim that he contributed some amount towards payment of the phone bill. *Affidavit Regarding Standing of Defendant Juan Enrique Segarra Palmer*, filed [by defendant Juan Segarra Palmer] February 24, 1987, p. 2.

Each roommate occupied her own bedroom. Gassin's room was located on the second floor, along with the living room and the kitchen. *Id.* at 121, 125. The apartment's bathroom, as well as the bedrooms of the other two occupants were all located on the third floor. *Id.* at 121–22.

### Discussion

The uncontested facts, drawn largely from F.B.I. surveillance activities, reveal that Segarra visited Anne Gassin at her apartment on several occasions, and that the two were intimately involved in laundering money believed to be part of the proceeds of the September 12, 1983 robbery of the Wells Fargo Depot in West Hartford, Connecticut. *Government's Title III Discovery*, vol. XV, pp. 490–91 (affidavit of Agent Neil P. Cronin).[1] The Government also claims that Gassin and Segarra were "lovers," *Transcript of Proceedings of January 29, 1987*, p. 146 (remarks of Assistant U.S. Attorney Dabrowski), suggesting that Segarra's trips to Cambridge were motivated in part by his personal relationship with Anne Gassin rather than solely by his interest in the stolen money. *Id.* 153–55 (remarks of attorney Weinglass).

The record indicates that, following a brief meeting with Anne Gassin in Mexico City on February 14, 1985, the defendant stayed at Gassin's apartment from Febru-

ary 21, 1985 to March 2, 1985. *Government's Title III Discovery*, vol. xv., pp. 40–43. Following this visit, Segarra returned to his family in Puerto Rico. *Id.* at 36–37. Segarra returned to Cambridge, and again stayed with Gassin at her apartment from April 25, 1985 to May 7, 1985, (excluding April 29 and 30 when Segarra visited defendant Paul Weinberg in western Massachusetts). *Id.* at 491. During this later visit, Segarra, then at Gassin's apartment, was overheard discussing his efforts at counting some of the stolen money. *Id.* at 439–40. On May 7, 1985, Segarra returned to Puerto Rico.

Segarra last visited Gassin's apartment from July 1 to July 3, 1985. *Id.* at 494–95; *Transcript of Proceedings of January 29, 1987*, p. 142 (remarks of Attorney Weinglass). Following this visit, Segarra joined his family in Cuernavaca, Mexico. Segarra was arrested on August 30, 1985 at the Dallas/Ft. Worth International Airport in Texas. *Transcript*, at 153 (remarks of Attorney Weinglass). At the time of his arrest Segarra alleges that he was on his way back to Boston to again visit with Anne Gassin. *Id.* 153–54.

■ In addition to alleging that he contributed towards the phone bill and that he stayed at the premises on occasion, Segarra also alleges 1) that he had a key to the apartment; 2) that he kept clothing and other personal effects there; 3) that he stored merchandise there in connection with his clothing business; and 4) that he had the expectation that his clothing, merchandise, and personal effects would remain private. *Affidavit*, p. 2. The defendant argues that these allegations are sufficient to form an adequate foundation on which the Court could find that he possessed a reasonable expectation of privacy in the apartment at the time of its search. The Court finds, however, that the defendant has failed to adequately make out a colorable standing claim sufficient to en-

---

1. The defendant explicitly relies on the affidavits of agent Neil P. Cronin to establish that he indeed visited the apartment. *Motion to Suppress Physical Evidence Seized Pursuant to a Search*, filed [on behalf of defendant Juan Se-

garra Palmer] December 22, 1986, exhibit 1, p. 2. *See Affidavit Regarding Standing of Defendant Juan Enrique Segarra Palmer*, filed February 17, 1987, p. 2 (claiming reliance on Government statements to support his standing claims).

title him to a hearing on the merits. Even assuming that the defendant's allegations are true, they do not constitute a valid standing claim.

The defendant bears the burden of establishing Fourth Amendment standing as a prerequisite to his seeking to exclude the fruits of a search and seizure on Fourth Amendment grounds. *Rakas v. Illinois*, 439 U.S. 128, 131 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387 (1978); *United States v. Smith*, 621 F.2d 483, 486 (2d Cir.1980), *cert. denied*, 449 U.S. 1086, 101 S.Ct. 875, 66 L.Ed.2d 812 (1981). In order to establish Fourth Amendment standing, a defendant must show 1) that he or she personally sought to preserve the area searched as private and 2) that his or her expectation of privacy in the location was objectively reasonable. *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979). A defendant may have standing to challenge the search of his girlfriend's apartment if he can demonstrate the objective reasonableness of his expectation of privacy there under this test. *United States v. Donaldson*, 606 F.Supp. 325, 329 (D.Conn.1985). The Court finds, however, that, under the circumstances, defendant Segarra's allegations fail to establish a legally sufficient standing claim.

In *Donaldson*, the Court concluded that the defendant, Ronald Donaldson, had standing to contest the search of his girlfriend's apartment on the basis that, at the time of the search and for some time prior thereto, the defendant had resided at the apartment, kept personal clothing and possessions there, shared financial and personal responsibility for maintenance of the apartment, and kept the apartment's phone in his own name. *Id.* at 329. Unlike the situation in *Donaldson*, however, Segarra did not reside at Anne Gassin's apartment. In fact, the record reveals that he only visited the location on an irregular basis, and then only for periods of brief duration. The sporadic nature of the defendant's visitations seriously undermines his claim. *See United States v. Garcia*, 741 F.2d 363, 366 (11th Cir.1984) (defendant lacked standing where he failed to demonstrate that his contacts with the apartment were "regular or personal enough" despite his control of the premises, his presence at the time of its search, and his use of the apartment by appointment to conduct his cocaine trade); *United States v. Mankani*, 738 F.2d 538, 545 (2d Cir.1984) (despite the fact that the defendants lived in rooms in the house, they had no expectation of privacy in the barn where they neither resided, nor kept personal belongings, and only visited periodically).

The defendant's other allegations do not correct this deficiency, nor do they, of themselves, serve as an adequate basis for standing. To begin with, the defendant claims that he kept belongings at the apartment and that he expected that they would remain private. However, "the privacy interest that must be established to support standing is an interest in the area searched, not an interest in the item[s] found." *United States v. Manbeck*, 744 F.2d 360, 374 (4th Cir.1984), *cert. denied, O'Hare v. United States*, 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985). "At most, an interest in the items found may be a factor considered when deciding whether there is a privacy interest in the area searched." *Id.* at 374.

The defendant also claims that he contributed some amount towards the phone bill. The Court finds that this factor adds little to the defendant's standing claim. *See United States v. Tussel*, 441 F.Supp. 1092, 1103 (M.D.Pa.1977) (one who merely finances the leasing of an airplane does not have a reasonable expectation of privacy as to the plane). The fact that the defendant may have paid part of the phone bill scarcely advances his claim that he attempted to preserve the location as private and that his professed expectation of privacy in the apartment is one that society is prepared to accept as reasonable. Likewise, the fact that the defendant may have had a key to the apartment is of no special significance. *United States v. Baron-Mantilla*, 743 F.2d 868, 870 (11th Cir.1984).

**1264**

The Court finds that Segarra's professed interest in Anne Gassin's apartment lacks most of the significant aspects of "reasonableness" present in the *Donaldson* case.[2] In fact, the defendant's factual allegations, even taken as true, establish that his claim is substantially similar to claims that have been denied by a number of courts. *See United States v. Jimenez,* 789 F.2d 167, 170 (2d Cir.1986) (defendant found to lack standing in co-defendant's apartment); *United States v. Rackley,* 742 F.2d 1266, 1270 (11th Cir.1984) (defendant lacked standing with regard to search of host's home despite the fact that he possessed a key, stayed overnight on several occasions, and kept some belongings there); *United States v. Robinson,* 698 F.2d 448, 454–55 (D.C.Cir.1983) (defendant lacked standing with regard to host's home where others entered the premises freely); *United States v. Meyer,* 656 F.2d 979, 981 (5th Cir.1981), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1413, 79 L.Ed.2d 739 (1984) (guest had no expectation of privacy in hosts' bathroom cabinet); *United States v. Vicknair,* 610 F.2d 372, 380–81 (5th Cir.1980), *cert. denied,* 449 U.S. 823, 101 S.Ct. 83, 66 L.Ed.2d 25 (1980) (the mere fact that some defendants had keys to the boat, had slept there, and kept belongings there on an intermittent basis was insufficient for standing purposes); *United States v. Badr,* 604 F.Supp. 569, 578 (E.D.N.Y.1985) (defendant, a Bostonian who had come to New York in connection with the drug transaction, had no standing to challenge the search of the Queens apartment); *United States v. Morales,* 568 F.Supp. 646, 649 (E.D.N.Y.1983) (casual visitors lack standing to challenge the search of a residence).[3] In *Jimenez,* the Court of Appeals for the Second Circuit concluded that the defendant in that case, Raymond Jimenez, lacked standing with regard to his co-defendant's apartment even though he had occasional access to the apartment "upon his specific request of the owner for the key," and he had admitted that some of the evidence seized from the apartment belonged to him. Like Raymond Jimenez, Segarra did not own, rent, or reside at the Cottage Street apartment; nor did he have control or unlimited access to the premises. *See United States v. Freire,* 710 F.2d 1515, 1519 (11th Cir.1983), *cert. denied,* 465 U.S. 1023, 104 S.Ct. 1277, 79 L.Ed.2d 681 (1984) (while ownership by itself is not talismanic of reasonableness, "[i]t is, nevertheless, a bright star by which courts are guided when the place invaded enjoys universal acceptance as a haven of privacy, such as one's home"). Despite the fact that he had a key, Segarra could only stay at Gassin's apartment with her consent. Segarra had no right to exclude others from the premises, particularly Anne Gassin's other roommates. He did not give out the address of the Cottage Street apartment as his own. In fact, he rented a mailbox under a fictitious name at Security Mail Service located at 89 Massachusetts Avenue in Boston. *Government's Title III Discovery,* vol. XV, p. 497. He did not pay for the utilities, nor did he contribute to the rent. In sum, Segarra's allegations fail to create the impression that his interest in the apartment was anything other than that of an occasional guest, albeit a welcome guest, who used the premises in furtherance of alleged illegal activities. The Court concludes that

---

2. *See Ruling on the Defendants' "Standing" to Challenge the Admissibility of Evidence Seized at Suite 301, 210 Ponce de Leon Avenue,* signed June 3, 1987.

3. *Compare these cases with United States v. Guerrero,* 756 F.2d 1342, 1348 n. 2 (9th Cir. 1984), *cert. denied,* 469 U.S. 934, 105 S.Ct. 334, 83 L.Ed.2d 270 (1984) (defendant found to have standing to challenge the search of his host's home "by reason of his status as an overnight guest ... when the search occurred"); *United States v. Salvador,* 740 F.2d 752, 755 n. 2 (9th Cir.1984), *cert. denied,* 469 U.S. 1196, 105 S.Ct. 978, 83 L.Ed.2d 980 (1985) (overnight guest found to have standing to challenge the search of their hosts' home); *United States v. Robertson,* 606 F.2d 853, 858 n. 2 (9th Cir.1979) (defendant found to have standing to challenge the search of a friend's residence where he was an overnight guest). The Court expressly declines to follow the precedent of the Ninth Circuit in this regard. *See Ruling on the Defendants' "Standing" to Challenge the Admissibility of Evidence Seized at Suite 301, 210 Ponce de Leon Avenue,* signed June 3, 1987.

the defendant's standing claim must therefore be denied.

SO ORDERED.