Grafton
No. 2011-606

THE STATE OF NEW HAMPSHIRE

v.

LOGAN SCHULZ

Argued: June 13, 2012
Resubmitted: August 17, 2012
Opinion Issued: October 4, 2012

*Michael A. Delaney*, attorney general (*Elizabeth C. Woodcock*, assistant attorney general, on the brief and orally), for the State.

*Stephanie Hausman*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

BASSETT, J. The defendant, Logan Schulz, appeals his convictions for being an accomplice to possession of cocaine, *see* RSA 318-B:2 (2011); RSA 626:8 (2007), and an accomplice to possession of cocaine with intent to distribute, *see* RSA 318-B:2, :26 (2011); RSA 626:8. He argues that the Superior Court (*Vaughan*, J.) erred in denying his motion to suppress because the search warrant for his home was unconstitutional both on its face and in its execution. We reverse and remand.

## I

The relevant facts are not disputed. On October 29, 2010, Officer Brandon Alling of the Haverhill Police Department went to the home that the defendant shared with his mother to serve her with a notice against trespass and harassment. While lawfully inside the home, Officer Alling saw three long guns near a staircase. Knowing that the defendant's mother was a convicted felon and, thus, prohibited from possessing firearms, *see* RSA 159:3 (2002), Alling sought a warrant to search the home. In his affidavit to the magistrate, he described the guns as follows:

> One appeared to be a shotgun with a dark colored stock, possibly a single shot. I did not observe a packing rod under the barrel indicating it was a black powder rifle and it appeared to have a chamber. Another appeared to be a .22 caliber with a wooden stock. The barrel on the rifle appeared to be too large to be a pellet gun and was longer than any pellet guns I recall ever seeing.

Based upon this information, the magistrate issued a warrant authorizing the police to search the defendant's home for "firearms." On October 31, three officers, including Alling, searched the defendant's home pursuant to the warrant. Early in the search, they learned that the three guns near the staircase were, in fact, "BB" guns and were, therefore, not unlawful for the defendant's mother to possess. The officers then continued the search and asked the defendant whether there were any additional guns in the house. The defendant informed them that he had a muzzle loader rifle and took them to his bedroom to show it to them. In the room, Officer Alling observed a lock box large enough to contain a handgun but too small to contain a long gun, and told the defendant to open it, noting that the officers could open it by force if necessary. Both the defendant and his mother protested on the grounds that the police had no reason to believe they had a handgun. The defendant's mother then became upset and admitted that the lock box contained cocaine and money. Based upon this information, the police obtained a second warrant to search the lock box and, upon execution of that warrant, found cocaine and money inside.

The trial court denied the defendant's motion to suppress after a hearing, and, after a bench trial, convicted him of the two drug charges.

## II

The defendant advances two reasons why the evidence against him should have been suppressed under Part I, Article 19 of the State Constitution and the Fourth Amendment of its federal counterpart: first, he

argues that the initial warrant lacked probable cause to search for all "firearms" generally and, accordingly, violated state and federal constitutional particularity requirements; and second, he argues that even if the scope of the initial warrant was proper, the police should have discontinued the search upon discovering that what they thought were firearms were, in fact, BB guns. The State argues that the initial warrant was supported by probable cause and was properly executed. The State does not rely upon the second warrant as an independent basis for denying the defendant's motion to suppress. We first address the defendant's arguments under the State Constitution and rely on federal law only to aid in our analysis. *State v. Ball*, 124 N.H. 226, 231-33 (1983).

When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's factual findings unless they lack support in the record or are clearly erroneous, and we review its legal conclusions *de novo*. *State v. Beauchemin*, 161 N.H. 654, 656 (2011).

We assume, without deciding, that the search warrant was supported by probable cause and satisfied the particularity requirement. We agree with the defendant, however, that the manner in which the warrant was executed offended constitutional standards.

 The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Similarly, Part I, Article 19 of our State Constitution "protects all people, their papers, their possessions and their homes from unreasonable searches and seizures." *State v. Mello*, 162 N.H. 115, 119 (2011) (quotation omitted); *see* N.H. CONST. pt. I, art. 19. The United States Supreme Court has established a two-step analysis for evaluating challenges to searches pursuant to a warrant under the Federal Constitution. *Maryland v. Garrison*, 480 U.S. 79, 84, 86 (1987). First, a warrant must be sufficiently particular and must be supported by a finding of probable cause. *Groh v. Ramirez*, 540 U.S. 551, 557 (2004); *State v. Orde*, 161 N.H. 260, 269 (2010). Probable cause exists if a person of ordinary caution would justifiably believe that what is sought will be found through the search and will aid in a particular apprehension or conviction. *Orde*, 161 N.H. at 269. To establish probable cause, the affiant need only present the magistrate sufficient facts and circumstances to demonstrate a substantial likelihood that the evidence or contraband sought will be found in the place to be searched. *Id.* Second, if the warrant satisfies the particularity and probable cause requirements, the manner of its execution must in other respects be reasonable. *See Garrison*, 480 U.S. at 84.

In *Garrison*, police officers executed a warrant to search a third floor apartment at a certain address for controlled substances and related

material. *Id.* at 80 n.1. After discovering incriminating evidence against the defendant the police realized that there were, in fact, two apartments on the third floor and that they had searched the wrong one. *Id.* at 80. The Supreme Court upheld the warrant on the grounds that its validity is judged not in hindsight but based upon the information made available to the issuing magistrate at the time it is issued. *Id.* at 85-86. But the Court also observed that, "as the officers recognized, they were required to discontinue the search of respondent's apartment as soon as they . . . were put on notice of the risk that they might be in a unit erroneously included within the terms of the warrant. The officers' conduct and the limits of the search were based on the information available as the search proceeded." *Id.* at 87.

■ *Garrison* was a particular application of the general constitutional principle that the police may not proceed with a search, absent some other sufficient justification, when they know, or reasonably should know, that there is no probable cause. *See, e.g., Guzman v. City of Chicago*, 565 F.3d 393, 397-98 (7th Cir. 2009) (police should have called off search under warrant that authorized search of single-family residence when they learned that house was not a single-family structure); *Liston v. County of Riverside*, 120 F.3d 965, 978 (9th Cir. 1997) (officers not entitled to qualified immunity in action under 42 U.S.C. § 1983 after "the degree of certainty [that they had searched the wrong house and detained the wrong person] reached such a level that a reasonable officer would have realized these facts"); *United States v. Ramirez*, 112 F.3d 849, 852 (7th Cir. 1997) ("[O]nce [a] mistake is discovered, the government cannot use the authority of the warrant . . . to conduct a search . . . that they know is unsupported by probable cause."); *Pray v. City of Sandusky*, 49 F.3d 1154, 1159 (6th Cir. 1995) (noting "parties agreed that the officers were obligated to retreat as soon as they knew or reasonably should have known that there was a mistake"). These cases are grounded in a strong tradition under both the State and Federal Constitutions of protecting citizens against all unreasonable governmental intrusions into the home — even those searches that were reasonable at their inception but, by virtue of information the police acquired during the search, became unreasonable in their execution. *Cf. Silverman v. United States*, 365 U.S. 505, 511 (1961) ("At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion."); *State v. Santana*, 133 N.H. 798, 803 (1991) (noting, in warrantless search case, that "when the entry is made into an individual's private dwelling, where

there exists a strong expectation of privacy and protection from government intrusion, the requirement of a warrant is particularly stringent" (quotations omitted)).

■ Indeed, New Hampshire's constitutional traditions have caused us to adopt greater privacy protections than those provided by the Federal Constitution in the related context of police officers relying in good faith upon a later-invalidated warrant. *See State v. Canelo*, 139 N.H. 376, 387 (1995). We held in *Canelo* that the good faith exception to the exclusionary rule is "incompatible with and detrimental to our citizens' strong right of privacy inherent in part I, article 19 and the prohibition against the issuance of warrants without probable cause." *Id.*; *cf. United States v. Leon*, 468 U.S. 897, 913 (1984) (adopting federal good faith exception). If it violates Part I, Article 19 for an officer to conduct a search under authority of a constitutionally defective warrant even if the officer relies upon it in good faith, *Canelo*, 139 N.H. at 387, it follows that it also violates our constitution when an officer proceeds with a search under a valid warrant after acquiring information that wholly dispels the facts upon which the initial probable cause determination was made.

■ *United States v. Marin-Buitrago*, 734 F.2d 889 (2d Cir. 1984), is illustrative of the principle reflected in *Garrison*. In that case, agents of the Drug Enforcement Administration obtained a warrant to search an apartment for evidence of narcotics trafficking and bail jumping connected to Cesar Correa. *Marin-Buitrago*, 734 F.2d at 891-92. Before executing the search, the agents arrested a person they believed to be Correa, but who insisted his name was "Marin" and who produced two identification documents to prove it. *Id.* at 892. In spite of this, the agents executed the warrant and found illegal narcotics. *Id.* A fingerprint check later confirmed that Marin was not Correa. *Id.* at 893. The defendants moved to suppress the evidence seized pursuant to the warrant on the grounds that the agents had a constitutional duty to report their mistaken belief that Marin was Correa to the magistrate. *Id.* at 890, 893. The Second Circuit Court of Appeals agreed with the defendants that probable cause must exist both when the warrant issues and when it is executed, stating: "[W]hen a definite and material change *has* occurred in the facts underlying the magistrate's determination of probable cause, it is the magistrate, not the executing officers, who must determine whether probable cause still exists." *Id.* at 894. Nevertheless, the court upheld the subsequent search because Marin's denials that he was Correa and the identifications he produced to corroborate those denials were not material to the determination of probable cause. *Id.* at 895-96.

■ Similarly, in *United States v. Bowling*, 900 F.2d 926 (6th Cir. 1990), agents of the United States Forest Service sought a warrant to search the defendants' trailer after having been told that the defendants owned two plots of marijuana located near it. *Bowling*, 900 F.2d at 928. While the warrant was being prepared, other officers went to the trailer and, after obtaining one defendant's consent, searched the trailer but found no incriminating evidence. *Id.* at 929. Two hours later, after the defendants had departed, other federal agents arrived with the warrant and began a second search. *Id.* Although they were informed about the initial search shortly after beginning the second search, the agents continued searching and found incriminating items connecting the defendants to the marijuana plots. *Id.* The defendants sought to suppress this evidence because the police had already performed a search which turned up nothing, thus eliminating probable cause. *Id.* As in *Marin-Buitrago*, the Sixth Circuit Court of Appeals agreed that probable cause must exist both when the warrant issues and when it is executed, recognizing: "[W]here an initial fruitless consent search dissipates the probable cause that justified a warrant, new indicia of probable cause must exist to repeat a search of the same premises pursuant to the warrant." *Id.* at 932. As a consequence, the court continued, "the officers should have refrained from the second search until a neutral magistrate determined that probable cause continued to exist." *Id.* at 933. Nevertheless, the court did not suppress the evidence because it found that a neutral magistrate would have found probable cause existed to conduct the second search even had the magistrate known about the fruitless consent search. *Id.* at 934.

■ In the context of wiretap warrants, the Seventh Circuit Court of Appeals in *Ramirez* applied *Garrison*'s command to "judge the constitutionality of [police] conduct in light of the information available to them at the time they acted," *Garrison*, 480 U.S. at 85. *Ramirez*, 112 F.3d at 851. The police in that case had obtained a warrant to place a wiretap on a cellular phone used by Hotchkiss but learned, at some point during the interception, that Hotchkiss was not using the wiretapped phone. *Id.* The court cited *Garrison* for the proposition that, after discovering the mistake, "the government cannot use the authority of the warrant . . . to conduct a search . . . that they know is unsupported by probable cause or is otherwise outside the scope of the statute or the Constitution." *Id.* at 852 (*Posner*, J.).

The need for probable cause to exist both at the time the warrant issues and throughout its execution is equally apparent in other Fourth Amendment applications, such as: (1) effectuating arrests, *see, e.g., United States v. Ortiz-Hernandez*, 427 F.3d 567, 574 (9th Cir. 2005) (although the police may rely on the totality of the facts available to them in establishing

probable cause to arrest, "[a] person may not be arrested, or must be released from arrest, if previously established probable cause has dissipated"); *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) ("The continuation of even a lawful arrest violates the Fourth Amendment when the police discover additional facts dissipating their earlier probable cause."); (2) interpreting Federal Rule of Criminal Procedure 41(e)(2)(A)(i), which, in its current form, requires a warrant to command that it be executed within fourteen days of issuance, *see, e.g., United States v. Lemmons*, 527 F.2d 662, 664 (6th Cir. 1975) (upholding search in part because "there [wa]s nothing in the record to indicate that the circumstances related in the agent's affidavit affording probable cause for the issuance of the search warrant had changed before it was executed"); *United States v. Nepstead*, 424 F.2d 269, 271 (9th Cir. 1970) (while the police should be given "reasonable latitude" to determine when a warrant is to be executed, "it is also necessary that search warrants be executed with some promptness in order to lessen the possibility that the facts upon which probable cause was initially based do not become dissipated"); and (3) conducting traffic stops, *see, e.g., State v. McKinnon-Andrews*, 151 N.H. 19, 23, 24-25 (2004) (adopting three-part test to determine when police officer's questions during traffic stop "turn[] a reasonable seizure into an unreasonable one"); *State v. Hight*, 146 N.H. 746, 748-49 (2001) (observing, in *dicta*, that expanding the scope of traffic stop to include investigation of other criminal activity is constitutionally permissible only if officer has "reasonable and articulable suspicion that other criminal activity is afoot" (quotation omitted)). At bottom, these cases support the general principle that the reasonableness of a search conducted pursuant to a warrant is a distinct constitutional inquiry from the question of whether a warrant is required in the first place. *Cf. Garrison*, 480 U.S. at 86-87.

■ Of course, unlike in *Marin-Buitrago*, in which the police learned of the purported mistake *before* executing the warrant, the police in the instant case and in *Bowling* had already begun the process of executing the warrant when they learned of the mistake — here, that the guns were not firearms but BB guns. But the same was also true of the officers in *Garrison*. *See Garrison*, 480 U.S. at 80. We recognize that, in many situations involving risky and high-intensity searches, police officers will not have an opportunity to reconsider with sober reflection the basis of probable cause each time a new piece of information comes to light. *Cf. id.* at 87 (recognizing "the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants"). Officers executing warrants cannot be expected to make the same decision in a split second, under

dangerous conditions, that a reviewing court makes after a comprehensive review. Moreover, facts establishing probable cause are based not upon certainties but upon inferential chains of reasoning, and new information acquired during the execution of a warrant may be consistent with the original finding of probable cause. *See Illinois v. Gates*, 462 U.S. 213, 238, 246 (1983) (requiring only a "fair probability" of criminal activity to establish probable cause). That is why the standard articulated here and in other cases incorporates the perspective of a reasonable officer *under the circumstances. Cf. Marin-Buitrago*, 734 F.2d at 895. This analysis necessarily involves consideration of new facts acquired during the search both insofar as they are *inconsistent* with probable cause as well as to the extent that there are reasonable alternative explanations that confirm the original grounds of the warrant. *Cf. id.* ("Facts omitted from a warrant affidavit are not material unless they cast doubt on the existence of probable cause."). Thus, a reviewing court must consider not only whether such new information undermines the initial probable cause determination, but also the circumstances under which the police discovered the mistake, including the degree to which the police had secured the area and no longer faced an ongoing threat.

 The important principle embodied in *Garrison* and the other cases discussed above is that police officers must discontinue a search under the authority of a warrant when an unambiguous and material change has occurred in the facts, eliminating probable cause. *See Garrison*, 480 U.S. at 84. To the extent that the police have encountered new information that casts doubt upon the ongoing justification for the search, they would be well-advised to refrain from continuing the search until a neutral magistrate determines that probable cause continues to exist. Should they fail to do so, the remedy of suppression will be warranted if a reviewing court finds that the magistrate would not have issued the warrant had the magistrate known about the new information. *See Bowling*, 900 F.2d at 933; *cf. State v. Stearns*, 130 N.H. 475, 484 (1988) ("If, when the disputed portions are stricken from the search warrant application, enough information remains to support a finding of probable cause, then the warrant will be upheld.").

 Applying this standard to the facts of this case, we conclude that the police were required to discontinue their search after discovering that the guns they had believed to be firearms were, in fact, BB guns. The State does not contend that the BB guns are "firearms" or that they could otherwise be considered deadly weapons. The warrant contained no other facts upon which the police might have relied in continuing to believe that the search was justified. *Cf. id.* at 933. As the trial court noted, "[t]he

officers examined the three long rifles that [O]fficer Alling noticed on his previous visit and realized that they were BB guns." That Alling was both the affiant and executing officer makes it especially clear that the police were on notice of the mistake. As a result, the officers' continued search of the defendant's home under authority of the warrant was unreasonable under Part I, Article 19 of the State Constitution.

Suppression is therefore the appropriate remedy under the circumstances. Had the magistrate known that Officer Alling observed BB guns, rather than firearms, and given that the affidavit did not provide any information as to how the BB guns were "used, intended to be used, or threatened to be used" so as to constitute a deadly weapon, RSA 625:11, V (2007), no warrant would have been authorized because there would have been no probable cause to believe the defendant's mother was committing, or had committed, the crime of being a felon in possession of a firearm or other deadly weapon, *see* RSA 159:3 (2002).

It bears emphasizing that both the standard we have employed and the conclusion that we reach are compelled under the well-established constitutional precedents recited above. Even more so than in *Garrison*, where the police were required to discontinue searching after they "were put on notice of the *risk* that they might be" in the wrong apartment, *Garrison*, 480 U.S. at 87 (emphasis added), here the police were required to discontinue searching when they learned that the three guns that formed the sole factual basis for the warrant were not, in fact, firearms. In so concluding, we are not imposing a new constitutional burden on the police; as was recognized in *Garrison*, police officers have a duty to reassess probable cause based upon information acquired after the warrant issues but before or during a search. The police must, of course, have some latitude to conduct searches pursuant to warrants. What the police cannot do, however, is treat the search warrant as an authorization for a full-scale search irrespective of developments subsequent to the warrant's issuance. While it may be the rare case in which facts discovered during the search clearly and unambiguously dispel probable cause, this is such a case. Accordingly, the execution of the warrant violated Part I, Article 19 of the State Constitution.

Because the defendant prevails under our State Constitution, we need not reach the federal issue. *See Ball*, 124 N.H. at 237.

*Reversed and remanded.*

DALIANIS, C.J., and HICKS, CONBOY and LYNN, JJ., concurred.