**UNITED STATES of America Plaintiff,**

v.

**Wilson GORRELL, Defendant.**

**No. 03–0067 (RJL).**

United States District Court,
District of Columbia.

Jan. 12, 2004.

Charles Joseph Harkins, Jr., Maria Lerner, U.S. Attorney's Office, Washington, DC, for Plaintiff.

Christopher Michael Davis, Davis & Davis, Erica Hashimoto, Federal Public Defender for D.C., Washington, DC, for Defendant.

### MEMORANDUM OPINION

LEON, District Judge.

Defendant Wilson Gorrell ("defendant," "Gorrell") has filed motions to suppress statements made at the time of his arrest and at the police station following his arrest. In addition, he seeks to suppress certain tangible evidence (i.e., narcotics, money, and computer records) recovered during the arrest and in the course of a subsequent search of his home. In essence, the defendant contends that his statements and the subsequent search of his home were the product of an illegal custodial interrogation and as a result violated both the Fourth and Fifth Amendments. The Court held an evidentiary hearing on this motion at which Detective William Witkoski, Officer Laura Worthington, and Officer Erick Alvarado, all of the Metropolitan Police Department ("MPD"),

testified to the events surrounding the defendant's arrest, his questioning at the station house, and the subsequent search of his home. Subsequently, the defendant filed a Motion to Suppress Computer Records and Digital Movie, evidence that was recovered from the defendant's home on January 2, 2003 pursuant to a search warrant but was not identified by the government until October 2003 due to a delay in processing the evidence by the Secret Service.

After considering the defendant's motions, the government's opposition thereto, and the testimony and arguments of counsel, the Court hereby grants the defendant's motion to suppress a certain statement made to the police during his arrest, but denies the motion as to other statements made to the police at the time of his arrest and at the station house thereafter. Further, the Court denies the defendant's motion to suppress the evidence seized during the arrest and during the search of the defendant's home.

## I. STATEMENT OF FACTS

On December 30, 2002, at approximately 5:58 p.m., Officer Laura Worthington of the MPD observed the defendant traveling eastbound in a white Mazda at a high rate of speed on the 2100 block of P Street, N.W. Hr'g Tr. at 33–35. Officer Worthington made a U-turn and followed the defendant. After pulling up behind the defendant's vehicle, she noticed that his license plates had expired. At this point, she signaled with her lights and siren for the defendant to pull over, which he did. Upon request, the defendant produced his driver's license, which had also expired some eight months earlier. At this point, Officer Worthington decided to place the defendant under arrest for driving without a license.

As she informed the defendant that he was being placed under arrest, she asked him if he had anything "she needed to know about." Hr'g Tr. at 36. The defendant responded that he had some drugs in his left pocket. *Id.* A blue bottle containing white powder, which later tested positive for methamphetamine, was recovered from the defendant's pocket by an assisting officer who had by this time arrived on the scene. Hr'g Tr. at 37. The assisting officer then asked the defendant "if he had anything else"[1] and the defendant informed the officers that he had more drugs in a bag on the front seat of the car. Hr'g Tr. at 66. The officers opened the bag and found narcotics and a large sum of money wrapped in a sheet of paper that appeared to be a computerized tally sheet of narcotics transactions. *Id.* The defendant and the evidence were taken to the Third District Station for processing.

Once at the station, Detective William Witkoski was assigned to question the defendant about the drugs and tally sheet found in the car. Before beginning the interview, Detective Witkoski spoke on the telephone with Detective Jaqueline Batres about the defendant's previous cooperation in one of her cases and the subsequent break down of that arrangement. During that conversation Detective Batres also indicated that the address which Detective Witkoski read to her from the defendant's driver's license (i.e., 2526 17th Street, N.W.) was incorrect. Hr'g Tr. at 17–18. Thus, when Detective Witkoski began questioning the defendant, he asked him about his previous cooperation with Detective Batres, his willingness to cooperate in his current case, and the accuracy of the address on his license. The defendant in-

---

1. Officer Worthington testified that it was her impression that the assisting officer was inquiring whether the defendant had anything else on his person. Hr'g Tr. at 67.

dicated a willingness to cooperate and verified that his home address was 440 M Street, N.W., the same address he had given Officer Worthington earlier to complete her arrest report. However, when Detective Witkoski began to read the defendant his *Miranda* rights, the defendant decided to speak to his attorney rather than discuss his case further. Hr'g Tr. at 25. Accordingly, Detective Witkoski wrote "Refused" across the top of the rights card and the interview ended. Hr'g Tr. at 14, 25. Thereafter, Detective Witkoski gave the 440 M Street address to Officer Worthington, who indicated that she already had that address. Hr'g Tr. at 23.

On January 2, 2003, after corroborating that the M Street address was in fact the defendant's home,[2] Officer Worthington applied for a warrant to search the defendant's premises. Hr'g Tr. at 42. The warrant authorized the officers to search for, among other things, "[d]rug paraphernalia, documents, records, computer, computer records, . . . photographs and any other evidence of drug trafficking . . . ." Gov't Opp. to Def. Mot. to Supp. Computer Records and Digital Movie, Attachment A. During the search of the defendant's home, which occurred on the same day the warrant was issued, additional narcotics were recovered as well as a digital camera, two computers and a zipdisk storage device. Gov't Opp. to Def. Mot. to Supp. Computer Records and Digital Movie at 2. The analysis of the computer hard drives by the U.S. Secret Service, which was delayed until October 2003 due to a backlog of similar requests, revealed documents that are alleged to be ledgers of drug transactions. *Id.* In addition, the digital camera contained a 15–second digital movie depicting methamphetamine. *Id.*

On May 15, 2003, the defendant was charged in a four-count superseding indictment dated with two counts of Unlawful Possession with Intent to Distribute MDMA ("Ecstacy") in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and two counts of Unlawful Possession with Intent to Distribute 5 Grams or More of Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii).

## II. ANALYSIS

The defendant seeks to suppress his statements and the drugs found on his person and in his vehicle based on two legal theories: (1) the stop of vehicle was illegal because it was not based on probable cause; and (2) even if there was probable cause, the officers' failure to provide him with his *Miranda* warnings precludes not only his subsequent statements but also the drugs he voluntarily identified to the officers. For the following reasons, the first theory is without any merit, and the latter is of limited value.

Probable cause exists where the arresting officer has facts and circumstances within his or her knowledge that would lead a reasonable person to believe that an offense has been or is being committed. *Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) (*quoting Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925)). Probable cause is not based on legal technicalities, but rather on the "practical considerations of everyday life on which reasonable and prudent men . . . act." *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Officer Worthington credibly testified that she observed the defendant driving at an excessive rate of speed and that

**2.** Officer Worthington testified that she visited the property and observed that the mailbox was marked with the name of the defendant's company. Hr'g Tr. at 42.

his license plates had expired. Officer Worthington, thus, had probable cause to stop the defendant based on either the speed at which he was traveling or the expired tags he was using. *Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Once Officer Worthington discovered that the defendant's license had also expired, she had yet another basis to arrest the defendant. Thus defendant's assertion that the stop of his vehicle was illegal, and that everything therefrom should be suppressed, is fanciful, at best.[3]

■ The defendant's second contention concerning the timing of the officer's *Miranda* warnings is of limited value, in part, because the government by its own admission has no intention of introducing the statements made by the defendant at the time of his arrest in its case in chief, thereby obviating any potential *Miranda* problem. Gov't.'s Second Supp. Brief in Opposition at 8. The defendant contends nonetheless that the drugs, money and tally sheet should be inadmissible at trial, because they are the "fruits" of the officers' *Miranda* violation. While the Court agrees with the defendant that his response to at least one of the officers' pre-*Miranda* warning questions should be inadmissible at trial, it declines, for the following reasons, to adopt the defendant's

recommendation to, in effect, extend the exclusionary rule to the evidence recovered in the wake of the follow-up interrogatory question.

■■ It is axiomatic that, once a suspect is taken into custody, the police must inform the suspect of his or her *Miranda* rights before initiating any interrogation. Interrogation includes not only express questioning, but "any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). Subject to very narrow exceptions, any statement given by a suspect in violation of *Miranda* must be suppressed at trial. *See New York v. Quarles,* 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984) (recognizing a public safety exception to *Miranda* ); *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) (un-*Mirandized* statements may be used however for impeachment purposes).

■ While placing Defendant Gorrell under arrest for a motor vehicle violation, Officer Worthington asked him a nonspecific question as to whether there was anything "she should know about." That question was not reasonably likely, under the circumstances, to elicit an incriminating response. Accordingly, his voluntary

---

**3.** The defendant's additional argument that Detective Witkoski's *pre-Miranda* request for verification of his address constituted improper interrogation is similarly fanciful. The Supreme Court expressly recognized a narrow exception to *Miranda* for routine booking information needed by the government to facilitate the administrative processing of an arrestee. *Pennsylvania v. Muniz,* 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990). Detective Witkoski's question regarding his address, and the defendant's answer, fall squarely within this exception. Although the address that the defendant provided was the address that was ultimately searched, the in-

formation itself is not actually incriminating. The booking exception contemplates that incriminating information will sometimes surface in response to primarily administrative, as opposed to investigative, questions. Moreover, Officer Worthington testified that the defendant had already provided the same address during the course of his arrest and that she corroborated the fact that it was the defendant's residence before applying for the search warrant. Accordingly, the warrant was not improperly premised on this information and the defendant's motion in that respect is denied.

admission in response to having drugs in his front pocket was not the product of an *interrogatory* question which therefore necessitated a preceding *Miranda* warning. However, the assisting officer's follow-up question to the defendant as to whether "he had anything more" was reasonably likely under these circumstances to produce a further incriminating response and therefore should have been preceded by the necessary *Miranda* warnings. That statement should therefore be suppressed.

Defendant's further contention, however, that this Court, like the Tenth Circuit in *United States v. Patane*, should not only suppress the statement but also the evidence recovered thereafter as the "fruit of the poisonous tree" goes too far. 304 F.3d 1013 (10th Cir.2002) *cert. granted* 538 U.S. 976, 123 S.Ct. 1788, 155 L.Ed.2d 664 (2003). While this Circuit has not to date addressed the issue of expanding the fruit of the poisonous tree doctrine, the Third and Fourth Circuits have held that the exclusionary rule framework as it applies to evidence derived from a Miranda violation has not as yet been modified by the Supreme Court.[4] *United States v. Sterling*, 283 F.3d 216 (4th Cir.); *United States v. DeSumma*, 272 F.3d 176 (3rd Cir.2001). This Court agrees.

■ Accordingly, the Miranda violation as to the second question in this case does not necessitate the exclusion of the drugs recovered thereafter from the defendant's vehicle as long as the search and seizure were otherwise lawful. The Court finds that they were. Once probable cause existed to arrest the defendant, the officers

had the right to conduct a search incident to that arrest of both the occupant and the passenger compartment of the automobile where the bag holding the drugs was located. *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Under this exception to the general warrant requirement, the officers' seizure of the drugs in the defendant's pants' pocket and in the bag on the passenger seat were constitutionally permissible.

■ Finally, the defendant argues that the warrant obtained by the government to search his home did not authorize the seizure of the computers or digital camera, and therefore the computer files and digital movie found in his residence should be suppressed. The Court disagrees. Officer Worthington completed an affidavit in support of her application for a search warrant that included a list of items to be *searched* for, including computers, computer records, photographs and "any other evidence of illegal drug trafficking and related items, as reflected in Attachment 'A.'" In the conclusion of the affidavit, Officer Worthington requests a warrant for the *seizure* of, among other things, computer records, photographs and items listed in Attachment A. Although this section does not explicitly mention computers, Attachment A does. The warrant, which issued on January 2, 2003, incorporated that affidavit and, by extension Attachment A, and authorized the search of the defendants apartment on or before Janu-

---

**4.** Those cases note that *Dickerson* itself references *Elstad*, without calling its legitimacy into question. Specifically, the Court noted that the holding of *Elstad*—that the fruits doctrine only applies to involuntary statements— "does not prove that Miranda is a nonconstitutional decision, but simply recognizes the fact that unreasonable searches under the Fourth Amendment are different from unwarned interrogation under the Fifth Amendment." *Dickerson*, 530 U.S. at 441, 120 S.Ct. 2326. In addition, the First Circuit has limited suppression to cases involving an intentional violation of Miranda, as opposed to a merely negligent violation. *United States v. Faulkingham*, 295 F.3d 85 (1st Cir.2002).

ary 10, 2003. Thus, the computers are covered by the plain language of the warrant through the incorporation of Attachment A, and their seizure was not improper.

 Although neither the warrant nor Attachment A specifically mention cameras, digital or otherwise, it did authorize the seizure of photographs and computer records. A digital movie is sufficiently akin to either of those categories that it falls within the scope of the warrant. The camera itself was merely a storage device for the movie, and because there was no practical way for the officers to download the relevant electronic data during the course of the initial search, seizing the entire camera for off-site analysis was permissible. *See e.g. United States v. Upham*, 168 F.3d 532, 535 (1st Cir.1999) (upholding the seizure of a computer for off-site analysis because of the impracticality of on-site retrieval of the individual files); *United States v. Hargus*, 128 F.3d 1358, 1363 (10th Cir.1997) (upholding seizure of file cabinets, even though they contained items beyond the scope of the search warrant, because of the "impracticality of on-site sorting and the constraints of executing a daytime search warrant."). Accordingly, the Court denies defendant's motion to suppress this evidence.[5]

### III. CONCLUSION

For the reasons set forth above, the Court hereby DENIES defendant's motion to suppress certain statements and evidence as the fruit of an illegal interrogation, DENIES defendant's motion to suppress certain evidence seized at his home, and GRANTS defendant's motion to suppress his statement in response to a certain interrogatory question asked at the time of his arrest.

SO ORDERED.

---

**5.** The defendant additionally argues that the data recovered from the computers and the camera is inadmissible due to the ten-month delay in processing. However, the warrant only required that the search of the *defendant's home* occur on or before January 10, 2003. The warrant did not limit the amount of time in which the government was required to complete its off-site forensic analysis of the seized items and the courts have not imposed such a prophylactic constraint on law enforcement. Although the delay in processing was lengthy, it did not take the data outside the scope of the warrant such that it needs to be suppressed. Accordingly, the Court rejects this argument in favor of the defendant's motion.