

FILED

Dec 23 2025, 8:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

Connor W. Bosworth,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

December 23, 2025

Court of Appeals Case No.
24A-CR-2688

Appeal from the Blackford Circuit Court

The Honorable Brian W. Bade, Judge

Trial Court Cause No.
05C01-2302-F4-37

---

**Opinion by Judge Bradford**
Judges May and Mathias concur.

**Bradford, Judge.**

# Case Summary

[1] While Indiana statutory authority provides that a search warrant shall be executed within ten days of issuance, *see* Indiana Code section 35-33-5-7(b), the Indiana Code is silent as to whether evidence recovered in connection with an untimely executed warrant may still be admissible or whether such evidence must be excluded. We often look to federal authority for guidance in situations where Indiana precedent is silent. As it relates to the question before us today, federal law provides that while exclusion of the evidence is one potential outcome, if the probable cause supporting the issuance of the warrant remains, exclusion is not required unless the defendant was prejudiced by the delay and the delay was the result of deliberate disregard for the law by the investigating law-enforcement officers.

[2] In this case, Connor Bosworth was charged with two counts of Level 4 felony child exploitation, sixteen counts of Level 5 felony child exploitation, ten counts of Level 5 felony possession of child pornography, and five counts of Level 6 felony possession of child pornography. He was convicted on all counts following a bench trial and was sentenced to an aggregate sixty-four-year sentence, of which twenty-three years were suspended to probation.

[3] Bosworth contends that the trial court abused its discretion in admitting certain evidence recovered in connection with a search warrant that had been served on

Meta regarding his social-media accounts, claiming that the evidence in question should have been excluded because the warrant had not been timely executed. Finding the relevant federal guidance to be persuasive and applying it to the facts of this case, we conclude that the trial court did not abuse its discretion in admitting the challenged evidence. We also conclude that Bosworth's sentence is not inappropriate. Bosworth's convictions and sentence are affirmed.

## Facts and Procedural History

On November 21, 2022, Officer Timothy Williams of the Hartford City Police Department was dispatched to an address in Hartford City on a harassment complaint. When he arrived, he spoke with S.C. S.C. informed Officer Williams that someone had sent her a nude photograph of herself that had been taken when she was under the age of eighteen. S.C. reported that the picture had been sent from an Instagram account. Officer Williams also received "essentially the same report" from M.R. Tr. Vol. II p. 78. Officer Williams reached out to Lieutenant David Johnson to "assist [him] in getting the records from Meta"[1] because Lieutenant Johnson had "a lot more experience in this type of" case than Officer Williams. Tr. Vol. II p. 78.

---

[1] Meta is the parent company of Instagram and Facebook.

[5] On November 21, 2022, Officer Williams sent a preservation request[2] to Meta for the Instagram account with the username "champ55454", as well as S.C.'s Instagram account. Tr. Vol. II p. 81. On November 30, 2022, Officer Williams sent an additional preservation request to Meta, which included the Instagram account with the username "champ55454" and M.R.'s Instagram account. Tr. Vol. II p. 81.

[6] On December 22, 2022, Officer Williams applied for a search warrant for various Instagram accounts, including username "champ55454[.]" Tr. Vol. II p. 86. The trial court approved and issued a search warrant that same day. The warrant authorized a search for electronic and digital records associated with various Instagram accounts, including the records that had previously been preserved. Because of his inexperience, Officer Williams waited for assistance from Lieutenant Johnson before sending the warrant to Meta. There was a delay in executing the warrant given that it was issued near the holiday period, at a time when Lieutenant Johnson and Officer Williams worked "opposite shifts" and Lieutenant Johnson is generally "off work quite a bit." Tr. Vol. II p. 98. The warrant was executed on January 5, 2023, when Officer Williams sent it to Meta.

[7] Officer Williams received records from Meta in response to the warrant on February 3, 2023. After receiving the records, Officer Williams "informed

---

[2] A preservation form is a request from law enforcement that a social-media provider freeze an account so that no new information can be added and no old information can be deleted.

Lieutenant Johnson of the findings and essentially turned over the investigation to him." Tr. Vol. II p. 89. From the Meta records, Lieutenant Johnson learned that email address "Cockshow738[@]gmail.com" was associated with the username "champ55454[.]" Tr. Vol. II p. 99. Lieutenant Johnson also determined from the IP address, which "was a very frequently used IP address related to the case" that the internet provider most frequently used in connection to the Instagram account was Comcast Cable. Tr. Vol. II p. 100. Given the nature of the case, Lieutenant Johnson "felt that there were exigent circumstances to try to determine the ownership of the IP address, so, [he] submitted an Emergency Situation Disclosure Request to Comcast Cable." Tr. Vol. II p. 100. The exigent circumstances included that "[i]n the messages, there were frequently discussions regarding rape and other crimes against a, at the time, an 8-year old juvenile that [had been] identified as living in the area of Hartford City[,]" making Lieutenant Johnson "very concerned that there may be an attempt or had already been attempts to harm this child or do something bad to this child." Tr. Vol. II p. 101.

[8] The account was associated with an individual named William Bosworth at an address on Cherry Street in Hartford City. William Bosworth is Bosworth's father. Based on the information that had been collected to-date, including "over a thousand pages related to champ55454," Lieutenant Johnson applied for a warrant to search the residence on Cherry Street. Tr. Vol. II p. 102. That warrant was issued and executed on February 12, 2023.

[9] Bosworth was alone at the residence when officers arrived to execute the warrant. Bosworth was transported to the Hartford City Police Department where he spoke with Lieutenant Johnson, provided Lieutenant Johnson with his telephone number, and confirmed that at least one of the cellular telephones recovered from the search was his. Bosworth also told Lieutenant Johnson that he "lived alone" in the Cherry Street house, did "not have a significant other[,]" and "[t]hat no one typically comes over to the residence." Tr. Vol. II p. 109. "Cell phones, laptops, hard drives, VHS tapes, just a variety of electronic storage devices" were recovered from the residence. Tr. Vol. II p. 105. Officers requested and were granted an additional search warrant to review the devices recovered during the search. Lieutenant Johnson subsequently confirmed, based on identifying information contained in the cellular telephone, that the cellular telephone with the number that Bosworth had provided to Lieutenant Johnson belonged to Bosworth. That same identifying information led Lieutenant Johnson to conclude that Instagram account champ55454 belonged to Bosworth.

[10] Among the Meta records relating to Bosworth's account, police found two images of nude infants uploaded from the account on June 3, 2022, along with a conversation between Bosworth and an Instagram account associated with the username "rarewhore123." Tr. Vol. II p. 113. The conversation included discussion about "liking really young and, then, asking for any other nude girls." Tr. Vol. II p. 114. The first image uploaded by Bosworth depicted "an infant male laying nude." Tr. Vol. II p. 113. The second image uploaded by

Bosworth depicted "an infant female and an unknown person is using their left hand to hold up the legs, the left leg of the female and there is a turgid penis visible near the vagina of the infant." Tr. Vol. II p. 114. A conversation ensued "about whether or not champ55454 rubbed his phallus on the child, discussing it wasn't his picture and discussing interest in raping a 7-year old." Tr. Vol. II p. 114.

[11] The Meta records also contained a conversation on July 28, 2022, between Bosworth and an account with the username "lblackburn." Tr. Vol. II p. 123. During the conversation, Bosworth uploaded and shared images of four different females with uncovered genitals or breasts. All four images were of girls under the age of eighteen, and police were able to identify all four women. The conversation associated with the images were explicit and relayed "very specific wording or content that would show that, that username champ55454 uploaded them or shared them in order to arouse his own sexual desires or that of another person." Tr. Vol. II p. 131.

[12] In addition to the Meta records, police also extracted data from Bosworth's cellular telephone. From the records extracted from Bosworth's cellular telephone, police discovered hundreds of images of "children under 12 years old, either engaging in sex acts or in a state of nudity." Tr. Vol. II p. 163. Other similar images were of children under the age of eighteen but older than twelve years of age. Many, if not all of the images, appeared to show "different victims." Tr. Vol. II p. 164.

[13] The State charged Bosworth with thirty-three counts: two counts of Level 4 felony child exploitation, sixteen counts of Level 5 felony child exploitation, ten counts of Level 5 felony possession of child pornography, and five counts of Level 6 felony possession of child pornography. Prior to trial, Bosworth moved to suppress the evidence obtained from the Meta records on the ground that the search warrant for those records had been executed fourteen days after it had been issued, which was outside the ten-day period set forth in Indiana Code section 35-33-5-7. Bosworth's claim was premised only on the statutory violation and not on constitutional grounds. The trial court denied Bosworth's motion following a hearing.

[14] Bosworth renewed his objection to the admission of the Meta records and any evidence that was subsequently obtained as a result of information in those records during his bench trial. As was the case with his pretrial motion, Bosworth did not raise a constitutional argument but argued only that the search warrant had been executed fourteen days after the warrant had been issued in violation of Indiana Code section 35-33-5-7. Bosworth requested a continuing objection, which the trial court granted. The trial court overruled Bosworth's objections and admitted the evidence. At the conclusion of trial, the trial court found Bosworth guilty of all thirty-three charges.

[15] Two of Bosworth's victims, M.R. and S.C., testified at Bosworth's sentencing hearing, with both detailing the negative effects that Bosworth's actions had had on their lives. M.R. testified that Bosworth had harassed her by sending her

"vulgar" and "disgusting" messages requesting "more pictures of [her] underage." Tr. Vol. II p. 198. Speaking to Bosworth, M.R. stated

> You threatened and blackmailed me in disgusting ways attempting to get me to send more. You stripped me of my trust and safety and left me paranoid and scared of what was next. You made me scared to go out into the community, to work, and do anything else besides stay inside. You had me so scared what you were doing with my pictures that I had panic attacks and couldn't sleep for almost every night. You told me you were done messaging me until you weren't. You only made 10 different accounts to send photos of me, of myself in an attempt to exploit me to my friends, family and co-workers.

Tr. Vol. II p. 198. S.C. also testified that Bosworth had sent her "vulgar, disgusting messages." Tr. Vol. II p. 203. Bosworth's actions caused S.C. to fear for her and her family's safety.

[16] In sentencing Bosworth, the trial court noted that he had shown no reaction or remorse during M.R.'s and S.C.'s testimony and had not expressed any signs of remorse throughout the proceedings. The trial court imposed an aggregate sixty-four-year sentence, with forty-one years executed in the Department of Correction and twenty-three years suspended to probation.

# Discussion and Decision

## I. Admission of Evidence

[17] The admission of evidence is a matter that we generally "leave to the discretion of the trial court." *Clark v. State*, 994 N.E.2d 252, 259–60 (Ind. 2013). "We

review these determinations for abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Id.* at 260 (internal citation omitted). "[W]e will not reverse the decision to admit or exclude evidence if that decision is sustainable on any ground." *Carpenter v. State*, 15 N.E.3d 1075, 1078 (Ind. Ct. App. 2014), *trans. denied*.

[18] The trial court issued a search warrant for certain records from Meta on December 22, 2022. The search warrant was not executed until January 5, 2023, fourteen days after it had been issued. Indiana Code section 35-33-5-7(b) provides that "[e]xcept as provided in subsection (f), a search warrant must be: (1) executed not more than ten (10) days after the date of issuance[.]"[3] Bosworth argues that because the warrant was not executed within the ten days allowed for by Indiana Code section 35-33-5-7(b), the evidence had to be excluded from trial.

[19] In *Brown v. Eaton*, 164 N.E.3d 153, 165 (Ind. Ct. App. 2021), *trans. denied*, we stated that "[o]fficers must not only execute a search warrant within the time constraints of Indiana Code section 35-33-5-7, but they must also constitutionally execute the search warrant." Bosworth does not develop a constitutional argument, arguing only that the search warrant was untimely executed. *Brown*, it is worth noting, did not touch on what a trial court should

---

[3] Subsection (f) does not apply to this case.

do with evidence that is recovered pursuant to a warrant that was untimely executed. 164 N.E.3d at 165–66.

[20] Additionally, we acknowledge Indiana authority suggesting that the question of timeliness of execution of a search warrant does not stop with application of Indiana Code section 35-33-5-7 alone. For example, in *Huffines v. State*, 739 N.E.2d 1093, 1097 (Ind. Ct. App. 2000), *trans. denied*, we concluded that a search warrant, which had been executed within the ten-day statutory period, had been improperly executed because the probable cause supporting the issuance of the search warrant had dissipated. Our opinion in *Huffines* indicates that the relevant question is not merely *when* a warrant was executed but rather *whether probable cause remained* at the time of execution.

[21] The parties have cited no Indiana authority that indicates that a violation of Indiana Code section 35-33-5-7(b) necessitates exclusion of the evidence, and we find none. In fact, we have found no Indiana caselaw indicating how a trial court should handle evidence discovered as a result of an untimely-executed warrant. When Indiana law is silent on a question, we may look to guidance from an interpretation of a similar question by the federal courts. *See Robinson v. State*, 682 N.E.2d 806, 810 (Ind. Ct. App. 1997) (providing that when confronted by an issue for the first time, we may look to guidance from federal interpretations of similar questions).

[22] The federal counterpart to Indiana Code section 35-33-5-7(b) is Federal Rule of Criminal Procedure 41(e)(2)(A)(i), which provides that an officer must "execute

the warrant within a specified time no longer than 14 days." The United States District Courts for the First and Second Districts have recognized that "'unreasonable delay in the execution of a warrant that results in the lapse of probable cause will invalidate a warrant.'" *U.S. v. Syphers*, 426 F.3d 461, 469 (1st Cir. 2005) (quoting *U.S. v. Marin-Buitrago*, 734 F.2d 889, 894 (2d Cir. 1984)). "The restrictions in Rule 41 'not only ensure that probable cause continues to exist, but also that it is the neutral magistrate, not the executing officers, who determines whether probable cause continues to exist.'" *Id.* (quoting *Marin-Buitrago*, 734 F.2d at 894). The policy reason behind the time limitation set forth "in Rule 41 is to prevent the execution of a stale warrant." *Id.*

[23]     A delay in execution of the warrant under Rule 41 does not render inadmissible evidence seized, absent a showing of prejudice to the defendants resulting from the delay. *See United States v. Cafero*, 473 F.2d 489, 499 (3d Cir. 1973). Courts have permitted some delay in the execution of search warrants involving computers because of the complexity of the search. *See, e.g., United States v. Gorrell*, 360 F. Supp. 2d 48, 55 n. 5 (D.D.C. 2004) (ten-month delay in processing of computer and camera seized, although "lengthy," "did not take the data outside the scope of the warrant such that it needs to be suppressed"); *United States v. Triumph Capital Group, Inc.*, 211 F.R.D. 31, 66 (D. Conn. 2002) ("[C]omputer searches are not, and cannot be subject to any rigid time limit because they may involve much more information than an ordinary document search, more preparation and a greater degree of care in their execution.").

*Id.* A "[d]elay in executing a warrant beyond the time set forth in the rule is not unreasonable unless, at the time it is executed, probable cause no longer exists

and the defendant demonstrates legal prejudice as a result of the delay." *Triumph Cap. Grp.*, 211 F.R.D. at 66. As such, "'noncompliance with Rule 41 does not automatically require exclusion of evidence in a federal prosecution. Instead, exclusion is required only if a defendant is prejudiced or if reckless disregard of proper procedure is evident.'" *U.S. v. Mutschelknaus*, 592 F.3d 826, 829 (8th Cir. 2010) (quoting *U.S. v. Spencer*, 439 F.3d 905, 913 (8th Cir. 2006)).

[24] Applying the federal precedent to the case at hand, we must consider whether the probable cause had dissipated by the time the warrant was executed, Bosworth was prejudiced by the delay, and reckless disregard for proper procedure was evident. Bosworth does not claim on appeal that probable cause had dissipated or that the delay in executing the warrant was due to any misconduct or reckless disregard by the investigating officers. Likewise, he does not argue, much less establish, that he was prejudiced by the delay.[4]

[25] The record demonstrates that probable cause continued to exist when the warrant was sent to Meta. Requests to freeze and preserve the information in certain social media accounts, including Bosworth's Instagram account, had been sent to Meta on November 21, and November 30, 2022, and there is no indication that these requests were not granted. A preservation request is a request to freeze the account so that no old information can be deleted, and no new information can be added. Given the nature of the investigation, the facts

---

[4] Bosworth's argument on appeal is limited to his claim that any violation of Indiana Code section 35-33-5-7(b) rendered all discovered evidence inadmissible.

relating to the frozen accounts that had established probable cause remained on January 5, 2023. *See generally Brown*, 164 N.E.3d at 165 (providing that probable cause to search the contents of a cellular telephone did not dissipate because "whatever evidence of criminal activity existed on Brown's phone at the time officers seized the phone was still present when the officers extracted the data from the phone because Brown did not have access to the phone while it was in police custody and there is no indication the data in the phone changed after it was seized"); *see also Breitweiser v. State*, 704 N.E.2d 496, 501 (Ind. Ct. App. 1999) (rejecting Brietweiser's claim that the probable cause had gone stale when Brietweiser pointed to "nothing, other than the passage of three days during the period between the issuance and execution of the search warrant, which affected the facts which gave police probable cause to search his home"). Probable cause still existed on January 5, 2023, when the warrant was executed and, again, Bosworth has not argued, much less established that he was prejudiced by the delay in execution.

[26] There is also no evidence that the investigating officers acted with deliberate disregard for Indiana Code section 35-33-5-7(b). Officer Williams had never investigated a case similar to Bosworth's and had requested (and obtained) assistance from Lieutenant Johnson, who had received specialized training and had previously worked to obtain records from online providers. Officer Williams testified that the delay in executing the warrant had not been malicious or intentional but had occurred because of his lack of experience with this type of case which had required him to wait for assistance from Lieutenant

Johnson. Officer Williams and Lieutenant Johnson had not been working the same shifts and Lieutenant Johnson testified that he is often out of the office during the month of December. In denying Bosworth's motion to suppress the challenged evidence, the trial court noted that the ten-day period between the issuance and execution of the warrant had encompassed Christmas Eve, Christmas Day, and New Year's Day. We agree with the State that

> [t]he record shows that rather than a bad faith attempt to try and circumvent the law, Officer Williams was trying to make sure he did things the right way. There is no evidence that his actions were an intentional or deliberate disregard of the law, nor does Bosworth claim that they were.

Appellee's Br. pp. 21–22.

[27] "Exclusion of evidence is '[t]he most extreme sanction' and is appropriate only when it avoids substantial prejudice to the defendant's rights." *State v. Tyree*, 237 N.E.3d 685, 692 (Ind. Ct. App. 2024) (quoting *Wiseheart v. State*, 491 N.E.2d 985, 991, 988 (Ind. 1986)) (brackets in original), *trans. denied*. As the Seventh Circuit has found with regard to a violation of Federal Rule of Procedure 41, we conclude that the remedy of potentially allowing Bosworth to go free based on a violation of Indiana Code section 35-33-5-7(b), especially were there was no prejudice argued, much less proven, "would be 'wildly out of proportion to the wrong.'" *U.S. v. Berkos*, 543 F.3d 392, 396 (7th Cir. 2008) (quoting *U.S. v. Cazares-Olivas*, 515 F.3d 726, 730 (7th Cir. 2008)). The trial court did not abuse its discretion by admitting the challenged evidence.

## II. Appropriateness of Sentence

[28] Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In analyzing such claims, we "concentrate less on comparing the facts of [the case at issue] to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character." *Paul v. State*, 888 N.E.2d 818, 825 (Ind. Ct. App. 2008) (internal quotation omitted), *trans. denied*. The defendant bears the burden of persuading us that his sentence is inappropriate. *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008).

[29] Bosworth was convicted of two counts of Level 4 felony child exploitation, sixteen counts of Level 5 felony child exploitation, ten counts of Level 5 felony possession of child pornography, and five counts of Level 6 felony possession of child pornography. "A person who commits a Level 4 felony shall be imprisoned for a fixed term of between two (2) and twelve (12) years, with the advisory sentence being six (6) years." Ind. Code § 35-50-2-5.5. "A person who commits a Level 5 felony … shall be imprisoned for a fixed term of between one (1) and six (6) years, with the advisory sentence being three (3) years." Ind. Code § 35-50-2-6(b). "A person who commits a Level 6 felony … shall be imprisoned for a fixed term of between six (6) months and two and one-

half (2½) years, with the advisory sentence being one (1) year."  Ind. Code § 35-50-2-7(b).

[30] With respect to each of Bosworth's thirty-three convictions, the trial court sentenced Bosworth as follows:

| Count 1 – Level 4 felony child exploitation | 6-year executed sentence | consecutive to Counts 2–33 |
|---|---|---|
| Count 2 – Level 4 felony child exploitation | 6-year executed sentence | consecutive to Count 1 and Counts 3–33 |
| Count 3 – Level 5 felony child exploitation | 6-year executed sentence | consecutive to Counts 1–2 and Counts 4–33 |
| Count 4 – Level 5 felony child exploitation | 6-year executed sentence | consecutive to Counts 1–3 and Counts 5–33 |
| Count 5 – Level 5 felony child exploitation | 6-year executed sentence | consecutive to Counts 1–4 and Counts 6–33 |
| Count 6 – Level 5 felony child exploitation | 3-year executed sentence | concurrent to Counts 7–11, consecutive to Counts 1–5 and 12–33 |
| Count 7 – Level 5 felony child exploitation | 3-year executed sentence | concurrent to Counts 6 and 8–11, consecutive to Counts 1–5 and 12–33 |
| Count 8 – Level 5 felony child exploitation | 3-year executed sentence | concurrent to Counts 6–7 and Counts 9–11, consecutive to Counts 1–5 and 12–33 |
| Count 9 – Level 5 felony child exploitation | 3-year executed sentence | concurrent to Counts 6–8 and Counts 10–11, consecutive to Counts 1–5 and 12–33 |
| Count 10 – Level 5 felony child exploitation | 3-year executed sentence | concurrent to Counts 6–9 and Count 11, consecutive to Counts 1–5 and 12–33 |
| Count 11 – Level 5 felony child exploitation | 3-year executed sentence | concurrent to Counts 6–10, consecutive to Counts 1–5 and 12–33 |

| | | |
|---|---|---|
| Count 12 – Level 5 felony child exploitation | 4-year executed sentence | consecutive to Counts 1–11 and Counts 13–33 |
| Count 13 – Level 5 felony child exploitation | 4-year executed sentence | consecutive to Counts 1–12 and Counts 14–33 |
| Count 14 – Level 5 felony child exploitation | 4-year suspended sentence | consecutive to Counts 1–13 and Counts 15–33 |
| Count 15 – Level 5 felony child exploitation | 4-year suspended sentence | consecutive to Counts 1–14 and Counts 16–33 |
| Count 16 – Level 5 felony child exploitation | 4-year suspended sentence | consecutive to Counts 1–15 and Counts 17–33 |
| Count 17 – Level 5 felony child exploitation | 4-year suspended sentence | consecutive to Counts 1–16 and Counts 18–33 |
| Count 18 – Level 5 felony child exploitation | 4-year suspended sentence | consecutive to Counts 1–17 and Counts 19–33 |
| Count 19 – Level 5 felony possession of child pornography | 3-year suspended sentence | concurrent with Counts 20–33, consecutive to Counts 1–18 |
| Count 20 – Level 5 felony possession of child pornography | 3-year suspended sentence | concurrent with Count 19 and Counts 21–28, consecutive to Counts 1–18 |
| Count 21 – Level 5 felony possession of child pornography | 3-year suspended sentence | concurrent with Counts 19–20 and Counts 22–28, consecutive to Counts 1–18 |
| Count 22 – Level 5 felony possession of child pornography | 3-year suspended sentence | concurrent with Counts 19–21 and Counts 23–33, consecutive to Counts 1–18 |
| Count 23 – Level 5 felony possession of child pornography | 3-year suspended sentence | concurrent with Counts 19–22 and Counts 24–28, consecutive to Counts 1–18 |
| Count 24 – Level 5 felony possession of child pornography | 3-year suspended sentence | concurrent with Counts 19–23 and Counts 25–28, consecutive to Counts 1–18 |
| Count 25 – Level 5 felony possession of child pornography | 3-year suspended sentence | concurrent with Counts 19–24 and Counts 26–28, consecutive to Counts 1–18 |

| | | |
|---|---|---|
| Count 26 – Level 5 felony possession of child pornography | 3-year suspended sentence | concurrent with Counts 19–25 and Counts 27–28, consecutive to Counts 1–18 |
| Count 27 – Level 5 felony possession of child pornography | 3-year suspended sentence | concurrent with Counts 19–26 and Count 28, consecutive to Counts 1–18 |
| Count 28 – Level 5 felony possession of child pornography | 3-year suspended sentence | concurrent with Counts 19–27, consecutive to Counts 1–18 |
| Count 29 – Level 6 felony possession of child pornography | 1-year suspended sentence | concurrent with Counts 19–28, consecutive to Counts 1–18 |
| Count 30 – Level 6 felony possession of child pornography | 1-year suspended sentence | concurrent with Counts 19–27 and Counts 31–33, consecutive to Counts 1–18 |
| Count 31 – Level 6 felony possession of child pornography | 1-year suspended sentence | concurrent with Counts 19–30 and Counts 32–33, consecutive to Counts 1–18 |
| Count 32 – Level 6 felony possession of child pornography | 1-year suspended sentence | concurrent with Counts 19–31 and Count 33, consecutive to Counts 1–18 |
| Count 33 – Level 6 felony possession of child pornography | 1-year suspended sentence | concurrent with Counts 19–32, consecutive to Counts 1–18 |

All told, the trial court imposed an aggregate sixty-four-year sentence with forty-one years executed and twenty-three years suspended to probation.

[31] With regard to the nature of the offenses, Bosworth concedes that

> there can be no dispute that the type of material [Bosworth] was accused of possessing and disseminating is very disturbing and there is cause for serious concern for someone who engages in

viewing, keeping and possessing this material. Indeed, the accompanying messages sent from accounts found to be associated with Bosworth are also repugnant and concerning.

Appellant's Br. p. 12. One of Bosworth's victims, M.R., testified that at sentencing that Bosworth had taunted and threatened her and had anonymously created ten different social media accounts to send photographs of her "in an attempt to exploit [her] to [her] friends, family and co-workers." Tr. Vol. II p. 198. Bosworth also harassed another victim, S.C., by sending her "such vulgar, disgusting messages" that she lost her sense of safety. Tr. Vol. II p. 203. A third victim was a cousin of Bosworth, and Bosworth violated a position of trust by victimizing his young cousin.

Bosworth argues, however, that "[b]y way of illustration, [Bosworth] has received a more significant sentence for disseminating reprehensible child pornography of some young children than a person who actually sexually abuses a child in the most serious way our law punishes." Appellant's Br. p. 13. Bosworth further argues that "[i]t is of less consequence how many individual items of the material [Bosworth] disseminated, although he has been punished severely and consecutively for each such item." Appellant's Br. p. 13. As mentioned, however, in analyzing the appropriateness of a sentence, we "concentrate less on comparing the facts of [the case at issue] to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character." *Paul*, 888 N.E.2d at 825.

[33] In any event, Bosworth possessed hundreds of images of many different children, either naked or engaged in sex acts, including numerous images of children under the age of twelve years old. Bosworth also shared images of four young girls that he had known personally displaying their uncovered genitals or breasts and had harassed at least two of his victims. We agree with the State that there is nothing about the nature of Bosworth's many criminal acts involving hundreds of different victims that justifies a reduced sentence.

[34] As for his character, Bosworth points to the fact that he had no criminal history prior to committing the criminal acts involved in this case. While this may be true, the fact that Bosworth possessed hundreds of sexually-explicit photographs of children and was found to have committed thirty-three acts of child exploitation and possession of child pornography undoubtedly reflects poorly on his character. Bosworth also demonstrated poor character by harassing two of his witnesses and does not appear to have shown any remorse for his actions at any point. Bosworth has failed to convince us that his sentence is inappropriate.

[35] The judgment of the trial court is affirmed.

May, J., and Mathias, J., concur.

ATTORNEY FOR APPELLANT

Brandon E. Murphy
Cannon Bruns & Murphy
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Kathy J. Bradley
Deputy Attorney General
Indianapolis, Indiana